**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

ROCKET MORTGAGE, LLC,

     *Plaintiff*,

         *v.*

UNITED STATES DEPARTMENT OF
HOUSING AND URBAN
DEVELOPMENT,

     *Defendant.*

Civil Action No. 1:24-cv-03368

---

**COMPLAINT**

---

## INTRODUCTION

1.      Rocket Mortgage, LLC ("Rocket Mortgage" or "Company") brings this complaint to address the government's misuse of the Fair Housing Act ("FHA"), 42 U.S.C. § 3605, to place the Company in conflicting and irreconcilable positions with respect to appraisal independence in the mortgage loan origination process.  On the one hand, the government takes the position that statutory and regulatory obligations mandate that Rocket Mortgage leave the valuation of a property securing a mortgage loan to the independent judgment of a licensed, third-party appraiser.  And based upon this position, the government and private plaintiffs have periodically accused mortgage lenders like Rocket Mortgage of taking action that could interfere with appraisers' independent judgment—and threatened the lenders with monetary penalties.

2.      On the other hand, the United States Department of Housing and Urban Development ("HUD") has now announced and enforced a new interpretation of the FHA that purports to *require* lenders like Rocket Mortgage to interfere in appraisal independence.  Under this new and conflicting approach, the government's theory is that Rocket Mortgage has the purported "authority to correct" an allegedly discriminatory appraisal, must exercise that authority when discrimination is alleged, and is therefore liable for violations of the FHA when it fails to do so.

3.      This puts Rocket Mortgage between the proverbial "rock and a hard place." If it takes action with an appraiser regarding an allegedly discriminatory appraisal, then it faces the prospect of a government enforcement action or private lawsuit alleging violations of statutory appraiser independence requirements.  But if it complies with those independence requirements by not taking action to "directly or indirectly" attempt to

influence the "independent judgment" of a third-party appraiser, then it faces the prospect of government enforcement actions and private lawsuits for alleged violations of the FHA. This reality of the government's inconsistent and conflicting approach requires judicial intervention.

4.      Rocket Mortgage is one of the largest mortgage originators in the United States.  It has built a reputation as the "gold standard" for mortgage loans, and it leads the industry in customer service as demonstrated by J.D. Power naming the Company the top lender for client service in primary mortgage origination and mortgage servicing a total of 22 times—the most of any mortgage lender.

5.      In underwriting mortgage loans and ensuring that the value of the property is sufficient to secure the loan, Rocket Mortgage is generally (but not always) required to obtain an appraisal of the property prepared by an independent third-party appraiser.  In such circumstances, federal law requires that such appraisals must be based only on "the independent judgment of the appraiser."  15 U.S.C. § 1639e(b)(1).

6.      For decades, federal regulators have stressed the importance of ensuring that appraisals are based on this "independent judgment" alone, free of lender influence. Congress has expressly prohibited any violation of appraisal independence.  15 U.S.C. § 1639e(a).  Indeed, as noted, the federal government has even gone so far as to take Rocket Mortgage (and other mortgage lenders) to court for what the government perceived to be intrusions on appraiser independence.

7.      But recently, HUD has unilaterally taken the position that appraiser independence can be subordinated or ignored when there is an allegation of appraiser bias or discrimination, although it has provided no clear guidance or direction on the

specific facts and circumstances that purportedly require a lender to ignore legally mandated appraiser independence.  In furtherance of its position, HUD seeks to use the FHA to hold mortgage lenders liable for the purportedly discriminatory actions of independent, third-party appraisers when the lender does not intervene to "correct" their appraisals.  As Drew Ketterer, the former Attorney General of Maine, observed, HUD's newfound application of the FHA "set[s] a dangerous new precedent in the mortgage industry that runs directly contrary to a central tenet of the Dodd-Frank Wall Street Reform and Consumer Protection Act—appraiser independence."  Drew Ketterer, *Feds May Have Overstepped in Suit Against Mortgage Lender*, Law360 (Nov. 19, 2024, 3:17 pm), https://www.law360.com/articles/2261191/feds-may-have-overstepped-in-suit-against-mortgage-lender.  HUD's new position "risks derailing the regulatory framework established by Dodd-Frank," and would remove the "firewall between the lender and the appraiser."  *Id.*

8.    When confronted with the problem of irreconcilably competing federal obligations, HUD has simply ducked the problem, instead expecting mortgage lenders to solve for themselves the paradox of intervening to "correct" appraisers' actions while following appraiser independence rules.  Worse still, it has avoided public scrutiny over that tension by failing to provide notice of, and an opportunity to comment on, its new policy of seeking to hold lenders responsible for the actions of independent appraisers under the FHA.

9.    Rocket Mortgage is the target of the government's conflicting approach, having been sued in this District by the federal government for an independent appraiser's alleged discriminatory conduct in *United States v. Rocket Mortgage, LLC*, No. 1:24-cv-

02915 (D. Colo.) ("Third-Party Appraiser Action").  While the Third-Party Appraiser Action is principally about an allegedly discriminatory appraisal performed by a licensed, third-party appraiser that Rocket Mortgage did not hire and had never met, the government has seen fit to label Rocket Mortgage as the lead defendant and assert a claim that it violated the FHA, because the Company allegedly did not exercise its purported "authority to correct" his appraisal or "cause it to be corrected."  Compl. ¶ 149, ECF No. 1, *United States v. Rocket Mortgage, LLC*, No. 24-cv-02915 (D. Colo.).  That claim is legally and factually defective for the reasons detailed in Rocket Mortgage's motion to dismiss the government's Complaint in the Third-Party Appraiser Action, including that Rocket Mortgage had no authority to correct the challenged appraisal as a matter of law.

10.    The government's complaint in the Third-Party Appraiser Action reflects HUD's apparent newfound view that appraiser independence is no longer inviolable.

11.    To say that the government is overreaching with its FHA claim against Rocket Mortgage in the Third-Party Appraiser Action is an understatement.  The government's assertion—*i.e.*, that adhering to the legal obligation to respect appraiser independence violates the FHA—forces Rocket Mortgage onto a tightrope that is impossible to walk.  It cannot simultaneously effectuate appraiser independence while exercising supervisory and corrective oversight over the same appraiser's valuations.

12.    And there is neither a need nor a basis for running roughshod over the government's long-standing appraiser independence requirements.  The Uniform Standards of Professional Appraisal Practice (USPAP)—the professional standards applicable to third-party appraisers—expressly prohibit appraisers from engaging in discrimination and require appraisers to verify, under penalties of perjury, in their

appraisal reports that their appraisals are not the product of discrimination.  Appraisers who violate these standards face the prospect of losing their appraisal license.  *See, e.g.*, Colo. Rev. Stat. §§ 12-10-613(1)(g), (2) (failure to follow "generally accepted standards of professional appraisal practice" may result in suspension, revocation, or non-renewal of appraisal license; Colo. Code Regs. § 725-2-11.1 (adopting USPAP as Colorado's generally accepted standards of professional appraisal practice).  In addition, the FHA provides a remedy for problematic appraisals:  appraisers can be held liable if they "discriminate" on the basis of "race, color, religion, sex, handicap, familial status, or national origin" in "appraising residential real property."  42 U.S.C. § 3605(a), (b)(2).  The government has brought such a claim against the independent third-party appraiser in the Third-Party Appraiser Action.  There is no legitimate basis for holding a *lender* liable for an individual *appraiser's* faults, particularly where (a) that appraiser is an independent, licensed, third-party appraiser who is, in effect, a stranger to the lender, (b) the lender did not hire or meet that appraiser, and (c) the lender did not participate in, or direct, the appraiser's conduct.

13.    HUD's FHA regulations impose liability for failing to "correct and end a discriminatory housing practice by a third-party," but even that imposition has limits, which apply in full force to lenders relying on third-party appraisals.  In that circumstance, liability "depends upon the extent of the person's control or any other legal responsibility [a lender] may have with respect to the conduct of such third-party."  24 C.F.R. § 100.7(a)(iii).  A lender plainly does not exercise "control" over, or have "other legal responsibility for," an independent, licensed third-party appraiser whom it does not engage and whom it may never meet.  To the contrary, the appraiser independence requirements of 15 U.S.C.

§ 1639e disclaim such control and responsibility.  Liability also depends on the person's knowledge or constructive knowledge of the discrimination.

14.      It is also unclear what HUD hopes to achieve by trying to force lenders to supervise, police, and "correct" the appraisals of independent, third-party appraisers. This is particularly so where requiring mortgage lenders like Rocket Mortgage to "correct" an allegedly discriminatory appraisal plainly crosses the red line of appraiser independence established by 15 U.S.C. § 1639e.

15.      In Rocket Mortgage's experience, instances of obvious, intentional discrimination are rare, and non-facial discrimination is highly challenging to detect during lender review of an appraisal report.  A problematic appraisal may not be apparent until well after a loan has been originated.  So what the government's capacious interpretation of the FHA—and HUD's policy implementing that interpretation—impose is lender responsibility, either in a government enforcement action or a private suit, for a third-party appraisal that may not be discernibly problematic to the lender.  The FHA does not stretch that far, and appraiser independence requirements—which are intended to separate lender and appraiser—are not so easily disregarded.

16.      Rocket Mortgage has filed this complaint to seek judicial resolution of a conflict that HUD has created: how to comply with the government-created conflict of competing mandates of appraiser oversight and appraiser independence.  This resolution is necessary, as HUD has avoided scrutiny of the conflict by failing to provide notice of and an opportunity to comment on its policy of requiring lenders to oversee and "correct" the appraisals of independent, third-party appraisers.

**JURISDICTION AND VENUE**

17.    This action arises under the Administrative Procedure Act (APA), 5 U.S.C. § 551 *et seq.*, and the Fair Housing Act, 42 U.S.C. § 3605.  This Court therefore has jurisdiction pursuant to 28 U.S.C. § 1331.

18.    Venue lies in this district under 28 U.S.C. § 1391(e)(1) because a substantial part of the events or omissions giving rise to Rocket Mortgage's claims occurred in this District.

**PARTIES**

19.    Plaintiff Rocket Mortgage, LLC is a Michigan limited liability company with its principal place of business in Detroit, Michigan.

20.    Defendant United States Department of Housing and Urban Development is an agency of the United States.  42 U.S.C. § 3532(a).  HUD is responsible for administrative enforcement of the FHA.  42 U.S.C. §§ 3610, 3612.  HUD also has authority to "make rules … to carry out" the FHA, provided that HUD "give[s] public notice and opportunity for comment."  42 U.S.C. § 3614a.

**FACTUAL BACKGROUND**

I.    **Federal law mandates appraiser independence and prohibits mortgage lenders like Rocket Mortgage from influencing (or attempting to influence) valuations of residential properties.**

21.    Mortgage lenders have long used third party appraisers to determine whether the value of residential property used as collateral can support a mortgage loan transaction.

22.     In 1989, Congress enacted the Financial Institutions Reform, Recovery and Enforcement Act (FIRREA), Pub. L. No. 101-73, 103 Stat. 183, which created a framework for the regulation of real property appraisals.

23.     The Department of the Treasury's Office of Thrift Supervision (OTS) promulgated rules implementing FIRREA, which set forth appraisal standards for "federally related transactions." *See* 12 C.F.R. § 564.4 *et seq*. (2006). Under those rules, appraisals could be conducted by one of two types of appraisers: staff appraisers and fee appraisers. Staff appraisers were appraisers employed by the mortgage lender and were generally required to be "independent of the lending, investment, and collection functions" of the mortgage lender. 12 C.F.R. § 564.5(a) (2006). Staff appraisers were also required to not have any "direct or indirect interest, financial or otherwise, in the property." *Id.* "If the only qualified persons available to perform an appraisal" were "involved in the lending, investment, or collection functions" of the lender, the lender was required to take "appropriate steps to ensure that the appraisers exercise independent judgment and that the appraisal is adequate." *Id.*

24.     Fee appraisers, *i.e.*, appraisers not employed by the lender, had more modest restrictions:  they were required to have "no direct or indirect interest, financial or otherwise, in the property or the transaction." *Id.* § 564.5(b).

25.     Other federal programs had program-specific appraiser independence requirements.  For example, since at least 1996, HUD has required that an appraisal for a mortgage loan backed by the Federal Housing Administration must include a certification that "the appraisal is not based on a requested minimum valuation, a specific valuation or range of values, or the approval of the loan." U.S. Dep't of Housing & Urban

Dev., Mortgagee Letter 96-26 (May 21, 1996).  Later, in 2009, HUD "reaffirm[ed]" that "mortgagees and third parties working on behalf of mortgagees are prohibited from," among other things, "[p]roviding to the appraiser an anticipated, estimated, or encouraged or desired value for a subject property or a proposed or target amount to be loaned to the borrower," and engaging in "[a]ny other act or practice that impairs or attempts to impair an appraiser's independence, objectivity or impartiality."  U.S. Dep't of Housing & Urban Dev., Mortgagee Letter 2009-28, at 3–4 (Sept. 18, 2009).

26.    In the wake of the Great Recession, Fannie Mae and Freddie Mac, government-sponsored enterprises that buy and guarantee mortgages, required lenders originating federally backed mortgages to abide by the Home Valuation Code of Conduct, which, among other things, prohibited mortgage lenders from "influenc[ing] or attempt[ing] to influence the development, reporting, result, or review of an appraisal through coercion, extortion, collusion, compensation, instruction, inducement, bribery, or in any other manner."  The Code took effect on May 1, 2009, but was superseded by Congress's enactment of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), Pub. L. No. 111-203, which was signed into law on July 21, 2010.

27.    Among other things, Dodd-Frank amended the Truth in Lending Act (TILA) to add a new section 129E, entitled "appraisal independence requirements."  Pub. L. No. 111-203, § 1472, 124 Stat. 1376, 2187 (codified as amended at 15 U.S.C. § 1639e). Dodd-Frank codified the independence requirements of the Home Valuation Code of Conduct by making it "unlawful, in extending credit or in providing any services for a consumer credit transaction secured by the principal dwelling of the consumer, to engage in any act or practice that violates appraisal independence" as described in the statute or

by regulation.  15 U.S.C. § 1639e(a).  This includes any appraisal for a mortgage loan in which a mortgage lender "instructs [or] induces … a person, appraisal management company, firm, or other entity conducting or involved in any appraisal … for the purpose of causing the appraised value assigned, under the appraisal, to the property to be based on any factor other than the independent judgment of the appraiser."  *Id.* § 1639e(b)(1).

28.    Any violation of TILA's appraisal-independence provision carries a civil penalty of up to $20,000 for each day the violation continues ($10,000 for a first violation).  *Id.* § 1639e(k)(1)–(2).  The provision can also be enforced through private civil actions.  *Id.* §§ 1639e(k)(1), 1640.

29.    In October 2010, the Board of Governors of the Federal Reserve System promulgated an interim final rule implementing Dodd-Frank's new appraisal independence requirements.  That rule is now codified at 12 C.F.R. § 1026.42 as part of Regulation Z, TILA's implementing regulation.  *Truth in Lending*, 75 Fed. Reg. 66,554 (Oct. 28, 2010).  Primary regulatory responsibility for Regulation Z was transferred to the CFPB on July 21, 2011.

30.    Regulation Z implements TILA's appraisal independence requirements and is enforceable in civil actions by the government and by private plaintiffs.  The regulation makes clear that mortgage lenders shall not, or shall not attempt to, "directly or indirectly cause the value assigned to the consumer's principal dwelling to be based on any factor other than the independent judgment of a person that prepares valuations," including through "instruction to … a person that prepares valuations or performs valuation management functions."  12 C.F.R. § 1026.42(c)(1).  It also prohibits lenders from

"[s]eeking to influence a person that prepares a valuation to report a minimum or maximum value for the consumer's principal dwelling." *Id.* § 1026.42(c)(1)(i)(A).

31.    Mortgage lenders have experienced firsthand the federal government's efforts to strictly enforce appraisal independence requirements. To provide just one example: In *United States v. Quicken Loans Inc.*, 239 F. Supp. 3d 1014 (E.D. Mich. 2017), the DOJ (unsuccessfully) brought claims against Quicken Loans Inc., Rocket Mortgage's predecessor, challenging so-called value appeals that Quicken Loans had taken with appraisers, seeking increases in appraisal values on legitimate bases. The government sought to hold Quicken Loans liable for allegedly "requesting specific valuations from appraisers," and, in doing so, it stressed the need to "[p]reserve appraiser independence." *Id.* at 1026 (quoting Mortgagee Letter 2009-28).

## II.    HUD asserts that anti-discrimination laws require mortgage lenders to correct allegedly discriminatory appraisals without regard to appraisal independence requirements.

32.    On June 1, 2021, President Biden announced a new interagency initiative— the Task Force on Property Appraisal and Valuation Equity (PAVE)—directed to "evaluate the causes, extent, and consequences of appraisal bias," and "establish a transformative set of recommendations to root out racial and ethnic bias in home valuations." *About PAVE*, https://pave.hud.gov/about (last visited Dec. 4, 2024).

33.    PAVE announced the interagency view that the Fair Housing Act and the Equal Credit Opportunity Act should be used "to eliminate bias and advance equity in home appraisals." PAVE, *Action Plan to Advance Property Appraisal and Valuation Equity* 4 (Mar. 2022) ("PAVE Report"), https://pave.hud.gov/sites/ pave.hud.gov/files/documents/PAVEActionPlan.pdf.

34.     HUD took a number of steps to achieve PAVE's objective of "promot[ing] equity in the appraisal process" and "ensur[ing] appraisals for [federally-]insured Mortgages are performed in a competent, independent, impartial, and objective manner." U.S. Dep't of Hous. & Urban Dev., Mortgagee Letter 2024-07, at 2.  Notably, HUD added new requirements for appraisers to follow in its "Nondiscrimination Policy, Appraiser Conduct, and other Federal Housing Administration … Roster Appraiser requirements." *Id*.  HUD believed these new requirements would compel appraisers to comply with anti-discrimination laws: "Under these requirements, the Appraiser must comply with applicable laws including anti-discrimination laws and the Fair Housing Act, among others."  *Id.*

35.     But HUD went further than imposing new requirements on appraisers alone. To fulfill the objectives of "anti-discrimination laws and the Fair Housing Act," Mortgagee Letter 2024-07 modified the Federal Housing Administration Single Family Housing Policy Handbook 4000.1 to impose "additional … standards for appraisal reviews," purportedly holding mortgage lenders issuing Federal Housing Administration loans responsible for "revising material deficiencies" in appraisals.  *Id.* at 2.  HUD stated that "material deficiencies" included "potential violation[s] of fair housing laws or professional standards related to nondiscrimination."  *Id.* at 4.  For mortgage loans backed by the Federal Housing Administration, HUD purports to require mortgage lenders to adopt an appraisal review process that "include[s] protocols for remediating deficiencies."  *Id.* at 7.

36.     HUD believes these requirements are necessary as "safeguards against unlawful discrimination."  *Id.* at 1.  In other words, HUD views the FHA as making lenders responsible for any discrimination by an appraiser.

37.    Other than stating that "[t]he review process and all communication with the Appraiser must conform with [the Handbook's] Safeguards for Appraiser Independence," Mortgagee Letter 2024-07 does not explain how mortgage lenders are permitted to engage in "remediation" for appraiser bias while complying with appraiser independence requirements mandated by federal law.  *Id.* at 4.  Nor does it explain when a borrower's allegations of appraiser bias or discrimination require a lender to act to "remediate" an appraisal.

38.    Through its "collaboration with Fannie Mae" and Freddie Mac, HUD imposed its expectation of lender responsibility for alleged appraiser bias and discrimination beyond the loans backed by the Federal Housing Administration.  Freddie Mac, *Selling* (Bulletin 2024-6) ("Freddie Mac Bulletin"), https://guide.freddiemac.com/app/guide/bulletin/2024-6.   On May 1, 2024, Fannie Mae issued a *Selling Guide* announcement requiring lenders to create a "framework to review and respond to a borrower-initiated reconsideration of value."  Fannie Mae, *Selling Guide* Announcement (SEL-2024-03) ("Fannie Mae Bulletin"), https://singlefamily.fanniemae.com/media/39081/display.    Under this framework, mortgage lenders "must include steps for the borrower(s) to appeal an appraisal when they believe the opinion of value … reflects prohibited discriminatory practices."  *Id.* at 2. Likewise, on May 1, 2024, Freddie Mac issued a bulletin similarly purporting to require lenders to adopt "[a] review and resolution procedure for [a reconsideration of value] request" for "when the Borrower(s) believes the appraiser's report or the appraiser's opinion of value … may be deficient" because it "reflects discriminatory practices."  *See*

Freddie Mac Bulletin.  Both Bulletins place central emphasis on the individual borrower's subjective belief in discrimination, not the existence of actual discrimination.

39.    Through the Fannie Mae and Freddie Mac Bulletins, HUD has imposed lender oversight of appraisal activity by independent, licensed third-party appraisers for the vast majority of mortgage loans for single-family homes originated in the United States.

40.    HUD has a policy of holding lenders responsible for appraiser bias or discrimination when lenders fail to "remediat[e] deficiencies" relating to perceived appraiser bias or discrimination.  HUD has not, however, explained under what circumstances an allegation of appraiser bias or discrimination purportedly requires a lender to engage in "remediation," or what such "remediation" should look like.

41.    HUD could have provided notice of that policy and an opportunity to comment on it—especially as it altered mortgage lenders' obligations under the FHA and put them at risk of breaching their appraiser independence requirements.  But instead, HUD adopted its policy without providing any opportunity to comment.

42.    Rocket Mortgage has been harmed by HUD's new policy.  One example of HUD's enforcement of this policy is the Charge of Discrimination that it issued against Rocket Mortgage, concerning the actions of an independent, third-party appraiser who allegedly provided "a significantly lower" valuation for a Black homeowner who sought a refinance loan from Rocket Mortgage.  *See* HUD, *Charge of Discrimination*, FHEO No. 08-21-3530-8 (July 15, 2024), https://www.hud.gov/sites/dfiles/FHEO/documents/ Charge_08-21-3530-8.pdf.

43.      HUD's charge against Rocket Mortgage led to the United States' FHA claim against Rocket Mortgage in the Third-Party Appraiser Action, *United States v. Rocket Mortgage*, No. 24-cv-2915 (D. Colo.).   The government's complaint in that case fully articulates HUD's legal basis for holding lenders responsible for correcting perceived appraisal bias or alleged appraisal discrimination:  according to the government, a lender is liable under the FHA when it has "the authority to correct the discriminatory appraisal, or cause it to be corrected, but fail[s] to do so."  Compl. ¶ 149, *United States v. Rocket Mortgage*, ECF No. 1, No. 24-cv-02915 (D. Colo. filed Oct. 21, 2024).

44.      HUD's policy of holding lenders responsible for purported appraiser bias and discrimination purportedly applies any time that a lender has an "indicat[ion of] a potential violation of fair housing laws" in an appraisal and fails to "remediate" that violation.  Mortgagee Letter (2024-07) at 4.

45.      HUD has already enforced its policy of holding lenders responsible for appraiser bias and discrimination, as demonstrated by the Charge of Discrimination leading to the Third-Party Appraiser Action.

46.      Rocket Mortgage also faces a credible threat of future harm and future enforcement action by HUD and DOJ as a result of HUD's policy of holding lenders responsible for alleged appraiser bias and discrimination.  Either Rocket Mortgage abides by appraiser independence requirements and violates HUD's policy that lenders must oversee appraisers and "remediate" or "correct" alleged appraiser bias or discrimination, or Rocket Mortgage takes steps to "correct" alleged appraiser bias or discrimination and violates appraiser independence obligations required by federal law, including, but not limited to, TILA.

16

47.     HUD has made statements that give Rocket Mortgage a reasoned basis for believing that future enforcement actions based on mortgage lenders' unwillingness to intrude on appraiser independence are likely.  In initiating the Third-Party Appraiser Action, Kristen Clarke, Assistant Attorney General for DOJ's Civil Rights Division, stated that the Action was part of DOJ's "ongoing efforts to bring an end to appraisal bias."  U.S. Dep't of Justice, Office of Public Affairs, *Justice Department Sues Rocket Mortgage, Appraisal Management Company and Appraiser for Race Discrimination in Mortgage Refinance Application* (Oct. 21, 2024), https://www.justice.gov/opa/pr/justice-department-sues-rocket-mortgage-appraisal-management-company-and-appraiser-race.     In   the same statement, HUD expressed that it "remains committed to working with DOJ to ensure appraisal companies and mortgage providers are held accountable when they violate our nation's fair housing laws."  *Id.*

48.     HUD's policy of holding lenders responsible for the alleged conduct of independent, third-party appraisers, and the legal theory on which it relies, conflicts with Section 1639e's appraiser independence requirements.

49.     After years of emphasizing the importance of ensuring appraiser independence, the federal government now says mortgage lenders should intrude on that independence as part of the *lender*'s fair lending obligations under the FHA.

50.     TILA's appraiser independence requirements were intended to keep lenders out of valuation decisions and to prevent value shopping.  Holding lenders responsible for the actions of independent, third-party appraisers, as HUD seeks to do through its new policy, is not only legally baseless, but it is also antithetical to TILA's core

prohibitions on value shopping and interference with the independent judgment of third-party appraisers.

51.     Section 1639e(b)(1) provides that a lender may not "instruct[]" or "induce[]" an appraiser "for the purpose of causing the appraised value assigned, under the appraisal, to the property to be based on any factor other than the independent judgment of the appraiser."  15 U.S.C. § 1639e(b)(1).  If a valuation is changed because of a lender's influence—by "instruction," "inducement," or otherwise—it is no longer based on "the independent judgment of the appraiser."  *Id.*  TILA forbids such an outcome.

52.     The limited exceptions of 15 U.S.C. § 1639e(c) do not resolve the conflict arising from appraisal independence, either, as HUD's expectation that lenders must oversee appraisers does not stop at Section 1639e(c)'s exceptions.  Instead, the government has now articulated its expectation that a lender's supervision of an independent, third-party appraiser may require the lender to "correct" an appraisal to remedy perceived bias or discrimination.  According to the government, this is somehow permissible because it is not "'for the purpose' of causing the appraised value to be based on a factor other than independent appraiser judgment."  United States' Statement of Interest, *Connolly v. Lanham*, ECF No. 47 at 11, No. 1:22-cv-2048 (D. Md. Mar. 13, 2023) ("*Connolly* Statement of Interest").  But this statement illustrates the conflict, because Rocket Mortgage cannot know whether any actions it takes or does not take in connection with an allegedly discriminatory appraisal will be labeled as appraiser interference or not.  The fact that the government or a private plaintiff can label the same conduct as appraisal interference *and* as required action to "correct" alleged appraisal discrimination leaves Rocket Mortgage in an untenable position.  This is particularly so because alleged

discrimination is not an "error" that lenders can point out to an appraiser under 15 U.S.C. § 1639e(c)(3).

53.     The government says the FHA requires lenders to take responsibility for an appraisal by an independent third-party appraiser because the FHA regulations hold covered persons "directly liable for … [f]ailing to take prompt action to correct and end a discriminatory housing practice by a third-party, where the person knew or should have known of the discriminatory conduct and had the power to correct it." *Connolly* Statement of Interest 8 (quoting 24 C.F.R. § 100.7(a)(1)(iii)).  But a regulation implementing one statute, especially a general one, cannot override the plain text of another statute, especially a specific one such as TILA.  Moreover, by its own terms, the HUD regulation on which the government relies does not give a lender license to breach TILA's appraiser independence requirements.  It states:  "The power to take prompt action to correct and end a discriminatory housing practice by a third-party depends upon the extent of the person's control or any other legal responsibility the person may have with respect to the conduct of such third-party."   24 C.F.R. § 100.7(a)(1)(iii).   Because appraisers are independent, *i.e.*, not subject to the lender's control or legal responsibility, the HUD regulation does not justify overriding Dodd-Frank's appraiser independence requirements.  *Id.*

54.     By contrast, appraisers themselves are regulated under the FHA, 42 U.S.C. § 3605(b)(2), and both the government and private plaintiffs can enforce the FHA against appraisers directly.  Indeed, there is a specific provision of the FHA governing appraisals, 42 U.S.C. § 3605(c), which ensures that appraisers remain free "to take into consideration factors other than race, color, religion, national origin, sex, handicap, or familial status."

55.    All told, the FHA does not place responsibility on lenders for the actions taken by independent, third-party appraisers.    Indeed, Section 1639e's appraisal independence requirements preclude a lender from exercising the kind of oversight needed to meaningfully scrutinize whether an appraisal is based only on permitted factors and "correct" or "remediate" it if it is not.  If a valuation violates the FHA, liability runs to the appraiser, not the lender.

56.    Nevertheless, the federal government advances in the Third-Party Appraiser Action an extreme version of its newfound theory of lender responsibility for the independent actions of a third-party appraiser, seeking to hold not just the appraiser liable for his allegedly discriminatory opinion of value, but also Rocket Mortgage for failing to use its purported (but non-existent and nowhere identified) "authority to correct the discriminatory appraisal."  Compl. ¶ 149, ECF No. 1, *United States v. Rocket Mortgage, LLC*, No. 1:24-cv-2915 (D. Colo.).  As explained above, 15 U.S.C. § 1639e's appraiser independence requirement means Rocket Mortgage has no such authority.  But the government's contrary allegations in the Third-Party Appraiser Action are no surprise, given that PAVE's mandate of "eliminat[ing] bias and advanc[ing] equity" have resulted in HUD's untenable interpretation of the FHA and enforcement position in court.  HUD expects lenders to "correct" or "remediate" perceived or alleged appraiser bias or discrimination, even if such "correction" or "remediation" would breach appraiser independence, in violation of a host of federal statutes and regulations preserving such independence.

**CLAIMS FOR RELIEF**

**COUNT I**
**Declaratory Judgment**

57.    Rocket Mortgage repeats and reincorporates all of its prior allegations.

58.    TILA prohibits a mortgage lender from taking actions with respect to an appraiser "for the purpose of causing the appraised value assigned, under the appraisal, to the property to be based on any factor other than the independent judgment of the appraiser."  15 U.S.C. § 1639e(b)(1).

59.    The FHA does not hold lenders responsible for valuations reached by third-party appraisers exercising their independent judgment, or for relying on such valuations. Appraisers who reach a valuation using their "independent judgment," as required by 15 U.S.C. § 1639e(b)(1), are not under the "control" of the mortgage lender obtaining the appraisal, nor does the lender bear "any other legal responsibility" for the appraiser.  24 C.F.R. § 100.7.

60.    Because TILA deprives a lender of the power to "correct" or "remediate" a valuation by a third-party appraiser, as HUD would otherwise require, a lender is not "directly liable" under the FHA for the acts of an appraiser.  24 C.F.R. § 100.7.

61.    Accordingly, Rocket Mortgage is entitled to a declaratory judgment that Rocket Mortgage is not liable as a lender under the FHA for an appraisal by an independent, third-party appraiser.

62.    Rocket Mortgage is also entitled to a declaratory judgment that 15 U.S.C. § 1693e precludes any requirement to "instruct" or "induce" an appraiser to address or correct a valuation for issues implicating the FHA.

63.     Rocket Mortgage's request for declaratory relief is ripe and fit for judicial resolution, as the questions Rocket Mortgage seeks to resolve by declaratory judgment are pure questions of law that would not benefit from any factual development.

64.     Unless these questions are considered immediately, Rocket Mortgage will face hardship, as Rocket Mortgage will continue to face the impossible challenge of attempting to meet the government's conflicting theories and requirements.  Because of HUD's new policy seeking to hold mortgage lenders responsible for alleged bias or discrimination by an independent, third-party appraiser, the government's conflicting constructions of the FHA and Section 1639e's appraisal independence requirements have exposed, and will continue to expose, Rocket Mortgage to adverse consequences, such as the Third-Party Appraiser Action against Rocket Mortgage.

65.     This declaratory judgment claim is independent and separable from the federal government's single count against Rocket Mortgage as alleged in the Third-Party Appraiser Action, as Rocket Mortgage's claim concerns more than the sparse factual allegations about Rocket Mortgage in that Action.

66.     Rocket Mortgage's declaratory judgment claim would serve a useful purpose in clarifying its legal obligations under the FHA and 15 U.S.C. § 1639e.

67.     Rocket Mortgage has no adequate remedy at law.  And there is no better or more effective alternative remedy for Rocket Mortgage's declaratory judgment claim.

**COUNT II**
**Administrative Procedure Act, 5 U.S.C. §§ 553(b), 701-706**
**Failure to Provide Notice and Comment**

68.     Rocket Mortgage repeats and reincorporates all of its prior allegations.

69.    Before an agency implements a new substantive policy, it must publish a notice in the Federal Register and "give interested persons an opportunity to participate in the rule making through the submission of written data, views, or arguments."  5 U.S.C. § 553(b)-(c).

70.    "Notice and comment gives affected parties fair warning of potential changes in the law and an opportunity to be heard on those changes—and it affords the agency a chance to avoid errors and make a more informed decision."  *Azar v. Allina Health Servs.*, 587 U.S. 566, 582 (2019).

71.    "An agency that, as a practical matter, has enacted a new substantive rule cannot evade notice and comment requirements of the APA by avoiding written statements or other 'official' interpretations" of a regulation or law.  *Shell Offshore Inc. v. Babbitt*, 238 F.3d 622, 630 (5th Cir. 2001).  An agency is "obliged … to submit [a] change for notice and comment" where "a new agency policy represents a significant departure from long established and consistent practice that substantially affects the regulated industry."  *Id.*

72.    HUD's policy of requiring lenders to take responsibility under the FHA for appraisals performed by independent, third-party appraisers is a significant departure from the federal government's longstanding practice of requiring lenders to honor appraiser independence.

73.    By promulgating its new policy without notice and comment, HUD violated the requirements set forth in the APA, 5 U.S.C. § 553(b).

74.    Under 42 U.S.C. § 3614a, HUD has the authority to promulgate rules to carry out the FHA—and an express responsibility to provide "public notice and opportunity

for comment," consistent with the APA. It should have exercised that authority to give mortgage lenders and other interested members of the public an opportunity to comment on the policy. Had it done so, mortgage lenders would have explained to HUD that the policy is contrary to law, as it would require mortgage lenders to breach appraiser independence requirements, as set forth in TILA, 15 U.S.C. § 1639e. HUD's failure to provide notice and comment deprived Rocket Mortgage of the opportunity to explain why the policy is contrary to law.

75. HUD's new policy is final agency action. It has the force and effect of law. The policy binds private parties—mortgage lenders—and imposes on them legal responsibility to supervise and correct the actions of appraisers.

76. HUD failed to establish that notice and comment were impracticable, unnecessary, or contrary to the public interest.

77. HUD's decision to not provide notice of, and an opportunity to comment on, its new policy was unlawful, without observance of procedure required by law, and an abuse of discretion.

**PRAYER FOR RELIEF**

WHEREFORE, Rocket Mortgage prays that this Court:

a) Declare that the FHA does not require Rocket Mortgage to influence the independent judgment of an appraiser to "correct" or "remediate" an appraisal of residential real property perceived to be based on a consideration prohibited by the FHA, as the exercise of such influence is prohibited by TILA's appraiser independence requirements, 15 U.S.C. § 1639e;

b) Declare that, due to the appraisal independence requirements of 15 U.S.C. § 1639e, Rocket Mortgage does not have "control [over] or any other legal responsibility" for an independent appraiser under 24 C.F.R. § 100.7;

c) Declare that Rocket Mortgage is not liable under the Fair Housing Act, 42 U.S.C. § 3605, for relying on an appraisal provided by an independent, third-party appraiser;

d) Issue an order vacating HUD's policy of holding mortgage lenders responsible for failing to correct or remediate perceived or alleged appraiser bias or discrimination in an appraisal;

e) Issue an order awarding Rocket Mortgage its costs in this action, including attorneys' fees;

f) Any other relief that the Court deems just and proper.

Respectfully submitted,


 /s/ Jeffrey B. Morganroth
Jeffrey B. Morganroth
MORGANROTH & MORGANROTH
344 N. Old Woodward Avenue
Suite 200
Birmingham, MI 48009
(248) 864-4000
*jmorganroth@morganrothlaw.com*

Brooks R. Brown
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000
*bbrown@goodwinlaw.com*

Keith Levenberg
Angelica Rankins
GOODWIN PROCTER LLP
1900 N Street, N.W.
Washington, D.C. 20036
(202) 346-4000
*klevenberg@goodwinlaw.com*
*arankins@goodwinlaw.com*

Attorneys for
Plaintiff Rocket Mortgage, LLC


Dated:  December 4, 2024