**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 24-cv-03368-REB

ROCKET MORTGAGE, LLC,

     Plaintiff,

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,

     Defendant.

---

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT (ECF No. 1)**

---

**TABLE OF CONTENTS**

INTRODUCTION......................................................................................................1

BACKGROUND ......................................................................................................3

I.    Statutory and Regulatory Background...................................................3

      a.    The Fair Housing Act. .......................................................3

      b.    Appraisal Independence and the Truth in Lending Act. ..................3

II.   Procedural Background ........................................................................5

      a.    The Enforcement Suit. ........................................................5

      b.    This Suit. ..........................................................................6

LEGAL STANDARDS.............................................................................................7

ARGUMENT ..........................................................................................................8

I.    The Court Lacks Subject-Matter Jurisdiction over Counts I & II. ..........................9

      a.    HUD is immune from Counts I & II. ..................................9

      b.    Count I does not state a constitutional case or controversy. .........16

II.   Counts I & II Otherwise Merit Dismissal. ............................................21

      a.    The Court should decline to exercise jurisdiction over Count
            I. ...................................................................................22

      b.    Count II fails to state a claim. ..........................................27

CONCLUSION .....................................................................................................28

i

# TABLE OF AUTHORITIES

**CASES**

*Abbott Lab'ys v. Gardner*,
  387 U.S. 136 (1967)................................................................................ 20

*Aetna Life Ins. Co. v. Haworth*,
  300 U.S. 227 (1937)................................................................................ 19

*Alabama-Coushatta Tribe of Tex. v. United States*,
  757 F.3d 484 (5th Cir. 2014).............................................................. 10, 11

*Azar v. Allina Health Servs.*,
  587 U.S. 566 (2019)................................................................................ 12

*Am. Fin. Benefits Ctr. v. FTC*,
  No. 17-cv-4817, 2018 WL 3203391 (N.D. Cal. May 29, 2018)......................... 8, 12, 16

*Asante v. Azar*,
  436 F. Supp. 3d 215 (D.D.C. 2020)........................................................... 21

*Better Mkts., Inc. v. U.S. Dep't of Justice*,
  83 F. Supp. 3d 250 (D.D.C. 2015)............................................................ 14

*Broadgate Inc. v. USCIS*,
  730 F. Supp. 2d 240 (D.D.C. 2010)........................................................... 28

*Brown v. City of Tulsa*,
  124 F.4th 1251 (10th Cir. 2025)................................................................. 8

*Buntrock v. SEC*,
  347 F.3d 995 (7th Cir. 2003)............................................................ 8, 12, 15

*Cabeza de Vaca Land & Cattle Co., LLC v. Babbitt*,
  58 F. Supp. 2d 1226 (D. Colo. 1999).......................................................... 9

*Calderon v. Ashmus*,
  523 U.S. 740 (1998)................................................................................ 21

*City of Oakland v. Holder*,
  901 F. Supp. 2d 1188 (N.D. Cal. 2013) ...................................................... 12

*Clark v. Haaland*,
  No. 22-2141, 2024 WL 4763759 (10th Cir. Nov. 13, 2024)......................... 11

*Coffman v. Breeze Corp.*,
    323 U.S. 316 (1945)...................................................................................21

*Colo. Farm Bureau Fed'n v. U.S. Forest Serv.*,
    220 F.3d 1171 (10th Cir. 2000)........................................................ 10, 11, 12

*Columbian Fin. Corp. v. BancInsure, Inc.*,
    650 F.3d 1372 (10th Cir. 2011)..................................................................19

*Connolly v. Lanham*,
    685 F. Supp. 3d 312 (D. Md. 2023) ........................................................ 3, 19

*Cont'l Bank & Tr. Co. v. Martin*,
    303 F.2d 214 (D.C. Cir. 1962) ....................................................................22

*Corner Post, Inc. v. Bd. of Govs. of Fed. Res. Sys.*,
    603 U.S. 799 (2024)...................................................................................28

*Cuervo v. Sorenson*,
    112 F.4th 1307 (10th Cir. 2024)....................................................................5

*Endo Pharms, Inc. v. FTC*,
    345 F. Supp. 3d 554 (E.D. Pa. 2018) ....................................................... 8, 12

*Ex parte McCardle*,
    7 Wall. 506 (1868).......................................................................................7

*Fornaro v. James*,
    416 F.3d 63 (D.C. Cir. 2005) ......................................................................15

*Fostvedt v. United States*,
    978 F.2d 1201 (10th Cir. 1992).....................................................................9

*FTC v. Am. Vehicle Prot. Corp.*,
    No. 22-cv-60298-RAR, 2022 WL 14638465 (S.D. Fla. Oct. 25, 2022) ......................15

*FTC v. Standard Oil Co.*,
    449 U.S. 232 (1980)............................................................................. 8, 20

*Gen. Fin. Corp. v. FTC*,
    700 F.2d 366 (7th Cir. 1983)......................................................................23

*Glapion v. Castro*,
    79 F. Supp. 3d 1207 (D. Colo. 2015)...........................................................15

*Graff v. Aberdeen Enterprizes, II, Inc.*,

    65 F.4th 500 (10th Cir. 2023).......................................................................... 7, 8

*Jama v. DHS*,
    760 F.3d 490 (6th Cir. 2014)............................................................................ 23

*Jim v. CoreCivic of Tenn., LLC*,
    No. CIV 20-0618 JB/JFR, 2021 WL 4990084, at *11 (D.N.M. Oct. 27, 2021)............. 24

*Lujan v. Nat'l Wildlife Federation*,
    497 U.S. 871 (1990)................................................................................. 10, 11

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007)................................................................................. 16, 22

*Mohamed v. Jones*,
    100 F.4th 1214 (10th Cir. 2024)........................................................................ 26

*Morgan Drexen, Inc. v. CFPB*,
    979 F. Supp. 2d 104 (D.D.C. 2013)..................................................................... 24

*Nerium Int'l, LLC v. FTC*,
    No. 19-cv-7189, 2020 WL 5217152 (N.D. Ill. Aug. 31, 2020) .......................... 8, 12, 16

*Norton v. S. Utah Wilderness All.*,
    542 U.S. 55 (2004)........................................................................................ 11

*Ohio Forestry Ass'n, Inc. v. Sierra Club*,
    523 U.S. 726 (1998)...................................................................................... 20

*Perez v. Mortg. Bankers Ass'n*,
    575 U.S. 92 (2015)........................................................................................ 28

*Public Serv. Comm'n of Utah v. Wycoff Co.*,
    344 U.S. 237 (1952)................................................................................. 19, 21

*Quicken Loans v. United States*,
    152 F. Supp. 3d 938 (E.D. Mich. 2015) ............................................................ 8, 12

*Shell Offshore, Inc. v. Babbitt*,
    238 F.3d 622 (5th Cir. 2001)........................................................................ 13, 14

*Simmat v. U.S. Bureau of Prisons*,
    413 F.3d 1225 (10th Cir. 2005)......................................................................... 10

*State Farm Fire & Cas. Co. v. Mhoon*,
    31 F.3d 979 (10th Cir. 1994)........................................................................... 22

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998).................................................................................... 7

*St. Paul Fire & Marine Ins. Co. v. Runyon*,
  53 F.3d 1167 (10th Cir. 1995)................................................................. 26

*Tex. Brine Co., LLC v. Occidental Chem. Corp.*,
  879 F.3d 1224 (10th Cir. 2018)............................................................... 20

*Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*,
  576 U.S. 519 (2015)................................................................................... 3

*Town of Sanford v. United States*,
  140 F.3d 20 (1st Cir. 1998)...................................................................... 23

*Travelers Cas. Ins. Co. of Am. v. A-Quality Auto Sales, Inc.*,
  98 F.4th 1307 (10th Cir. 2024)................................................... 16, 17, 19

*Tucker v. Faith Bible Chapel Int'l*,
  36 F.4th 1021 (10th Cir. 2022)................................................................ 26

*United States v. City of Las Cruces*,
  289 F.3d 1170 (10th Cir. 2002)............................................................... 27

*United States v. Mitchell*,
  463 U.S. 206 (1983).................................................................................. 9

*Utah v. U.S. Dep't of Interior*,
  535 F.3d 1184 (10th Cir. 2008)............................................................... 19

*Volvo GM Heavy Truck Corp. v. U.S. Dep't of Labor*,
  118 F.3d 205 (4th Cir. 1997).................................................................... 23

*Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*,
  910 F.3d 1118 (10th Cir. 2018)............................................................... 23

*Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*,
  679 F. Supp. 2d 1287 (D. Kan. 2010)...................................................... 23

*Walmart, Inc. v. U.S. Dep't of Justice*,
  21 F.4th 300 (5th Cir. 2021)....................................................... 11, 14, 15

*Warren v. JPMorgan Chase Bank, N.A.*,
  No. CV-14-02329, 2015 WL 11120693 (D. Ariz. June 4, 2015) ................. 4

*Watt v. Alaska*,

451 U.S. 259 (1981)................................................................................................... 25

*Wilton v. Seven Falls Co.*,
   515 U.S. 277 (1995)........................................................................................... 22

**STATUTES**

5 U.S.C. § 551................................................................................................... 10, 12

5 U.S.C. § 553......................................................................................................... 12

5 U.S.C. § 701......................................................................................................... 10

5 U.S.C. § 702......................................................................................................... 10

5 U.S.C. § 704................................................................................................... 10, 28

15 U.S.C. § 1639e.............................................................................................. 5, 18

28 U.S.C. § 2201..................................................................................................... 16

42 U.S.C. § 3601....................................................................................................... 3

42 U.S.C. § 3602....................................................................................................... 4

42 U.S.C. § 3605....................................................................................................... 3

42 U.S.C. § 3610....................................................................................................... 4

42 U.S.C. § 3612....................................................................................................... 4

42 U.S.C. § 3614....................................................................................................... 4

**RULES**

Fed. R. Civ. P. 12.............................................................................................. 7, 8, 28

**REGULATIONS**

24 C.F.R. § 100.7 ................................................................................................... 18

24 C.F.R. § 100.135 .......................................................................................... 3, 19

**OTHER AUTHORITIES**

*Implementation of the Fair Housing Amendments of 1988*,
   54 Fed. Reg. 3232 (Jan. 23, 1989) ..................................................................... 3, 13

## INTRODUCTION

A Denver homeowner applied to refinance her home through Plaintiff Rocket Mortgage, who hired an appraisal company that sent an appraiser to the homeowner's property. The homeowner's experience with the appraiser left her believing that the appraiser had discriminated against her based on her race. After she lodged a complaint, Defendant U.S. Department of Housing and Urban Development ("HUD") investigated her case and concluded that the appraiser did discriminate on the basis of race, as did Rocket Mortgage when it learned of the appraiser's behavior, but nonetheless relied on the appraisal and cancelled the homeowner's refinancing application.

HUD's investigation resulted in the United States bringing a Fair Housing Act ("FHA") suit in October 2024 in this District against Rocket Mortgage, the appraiser, the appraiser's LLC, and the appraisal management company that Rocket Mortgage retained to obtain the appraisal (the "Enforcement Suit"). Rocket Mortgage moved to dismiss the Enforcement Suit in December. Among other defenses, the lender argued that the Truth in Lending Act ("TILA") forbids lenders like it from taking action to correct or account for a racially discriminatory appraisal, even when the lender knows that the appraisal has been tainted by discrimination. The same day that Rocket Mortgage moved to dismiss the Enforcement Suit, it filed its two-count complaint in this litigation. Count I requests a declaratory judgment as to the relationship between the FHA and TILA, and Count II alleges a violation of the notice-and-comment requirements of the Administrative Procedure Act ("APA").

As the timing of its filing suggests, this suit represents little more than an attempt

1

to forestall the Enforcement Suit through another avenue.  To be sure, Rocket Mortgage strives mightily to differentiate the Enforcement Suit from this case:  Count I asks the Court to resolve a more abstract version of the TILA defense Rocket Mortgage raised in the Enforcement Suit, and Count II purports to transfigure the Enforcement Suit into a new, unwritten policy of the agency.  But at bottom Rocket Mortgage's attempted end-run around the Enforcement Suit faces insurmountable threshold obstacles.

To start, the Court lacks subject-matter jurisdiction.  The APA only waives sovereign immunity where a plaintiff's claim is based on final agency action, but Rocket Mortgage has identified none.  And while Count II purports to rest on the promulgation of an APA "rule," the facts pleaded do not plausibly allege such a rule exists.  Because neither count pleads final agency action, HUD is immune.  Separately, the APA only waives sovereign immunity where the plaintiff lacks an adequate alternative remedy.  Rocket Mortgage has such a remedy for Count I in the Enforcement Suit.  Apart from HUD's immunity, the Court independently lacks subject-matter jurisdiction to hear Count I because it presents no case or controversy within the federal judicial power to resolve.

Even if this Court concludes it has jurisdiction to hear Count I, it should decline to do so in its discretion.  Permitting Count I to proceed would permit circumvention of enforcement proceedings, infringe on the comity due to another court in this District, fail to resolve present or future controversies, serve no useful purpose in clarifying the relevant statutes, potentially afford Rocket Mortgage an improper litigating advantage, and needlessly decide abstract issues of law at the expense of present and future fora better equipped to examine them in concrete settings.

Count II, in turn, should be dismissed for failure to state a claim. For the same reason Count II fails to establish a waiver of sovereign immunity—absence of final agency action—there is no APA cause of action to bring it. And because there is no plausible allegation that HUD has promulgated a new substantive rule, there is no plausible claim that it violated the APA when it did so.

The Court should dismiss the complaint.

## BACKGROUND

I.    **Statutory and Regulatory Background**

a.  **The Fair Housing Act**

With the aim of providing "fair housing throughout the United States," 42 U.S.C. § 3601, and to eradicate discrimination in residential real estate transactions, Congress enacted the Fair Housing Act in 1968. *Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 528-30 (2015). To that end, as relevant here, the Act prohibits "any person or other entity whose business includes engaging in residential real estate-related transactions" from "discriminat[ing] against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race[.]" 42 U.S.C. § 3605(a). Under a longstanding HUD regulation, "[u]sing an appraisal . . . in connection with the sale, rental, or financing of any dwelling where the person knows or reasonably should know that the appraisal improperly takes into consideration race" constitutes discrimination in violation of § 3605(a). *Implementation of the Fair Housing Amendments of 1988*, 54 Fed. Reg. 3232, 3287 (Jan. 23, 1989) (codified at 24 C.F.R. § 100.135(d)(1)); *see also*, *e.g.*, *Connolly v. Lanham*, 685 F. Supp. 3d 312, 325 (D. Md.

2023) (denying motion to dismiss where plaintiffs plausibly alleged lender knew or should have known appraisal was discriminatory).

The Attorney General and the Secretary of HUD share responsibility for federal enforcement of the Fair Housing Act, including authority over the administrative system for investigation and addressing individual complaints.  42 U.S.C. §§ 3602(a), 3610, 3612, 3614.    Upon receipt of a timely complaint of discrimination, the Secretary must investigate.  *Id.* § 3610(a)(1)(B)(iv).  If the Secretary determines there is reasonable cause to believe there has been an FHA violation, he issues a charge of discrimination.  *Id.* § 3610(g).  The complainant or respondent then "may elect to have the claims asserted in that charge decided in a civil action," *id.* § 3612(a), which requires the Attorney General to "commence and maintain" a civil suit within 30 days.  *Id.* § 3612(o).

### b.  Appraisal Independence and the Truth in Lending Act

Lenders like Rocket Mortgage are also subject to applicable provisions of the Truth in Lending Act.  "As a general matter, 15 U.S.C. § 1639e[, the Truth in Lending Act,] addresses violations of appraisal independence with respect to consumer credit transactions, deterring 'a person with an interest in the underlying transaction' from incentivizing or coercing an appraiser to misrepresent property value."  *Warren v. JPMorgan Chase Bank, N.A.*, No. CV-14-02329, 2015 WL 11120693, at *2 (D. Ariz. June 4, 2015).  TILA operationalizes the concept of "appraiser independence" through an illustrative list of prohibited acts, including any that "compensates, coerces, extorts, colludes, instructs, induces, bribes, or intimidates" an appraiser "for the purpose of causing the appraised value . . . to be based on any factor other than the independent

judgment of the appraiser." 15 U.S.C. § 1639e(b)(1). The law also prohibits acts that "seek[] to influence an appraiser or otherwise to encourage a targeted value in order to facilitate the making or pricing of the transaction." *Id.* § 1639e(b)(3). Importantly, TILA explicitly excludes particular acts from its prohibitions. To wit, mortgage lenders are permitted to request that an appraiser "(1) [c]onsider additional, appropriate property information, including the consideration of additional comparable properties to make or support an appraisal[;] (2) [p]rovide further detail, substantiation, or explanation for the appraiser's value conclusion[; and] (3) [c]orrect errors in the appraisal report." *Id.* § 1639e(c)(1)-(3).

## II.   Procedural Background

### a.  The Enforcement Suit

Francesca Cheroutes, a Black homeowner in Denver, applied to Rocket Mortgage to refinance her property. Charge of Discrimination ¶ 11, Ex. A.[1] As part of the refinancing process, Rocket Mortgage hired an appraisal company, Solidifi U.S., Inc., to appraise Ms. Cheroutes' home. *Id.* ¶ 12. Solidifi, in turn, retained appraiser Maksym Mykhailyna to complete the appraisal. *Id.* As alleged in the complaint filed in the Enforcement Suit, Mr. Mykhailyna's appraisal arrived at a substantially lower estimate of Ms. Cheroutes' home's value than was reasonable under the circumstances. Compl. ¶ 75, *United States v. Rocket Mortgage*, No. 1:24-cv-2915 (D. Colo. Oct. 21, 2024) ("Enforcement Compl."). The appraisal report, alongside Ms. Cheroutes' experience with Mr. Mykhailyna's visit to

---

[1] The Court may consider the Charge of Discrimination, which is incorporated by reference at ¶ 42 of the complaint. *See Cuervo v. Sorenson*, 112 F.4th 1307, 1312 (10th Cir. 2024).

her property, led her to believe that her home had been undervalued because of her race. To start, the appraisal value was "significantly lower" than the value for which the property had been appraised eight months before, *id.* ¶ 14, a puzzling fact in light of rising property values in the area, *id.* ¶¶ 15, 19. Moreover, the report contained various factual "inaccuracies and inappropriate comparisons," *id.* ¶ 21, including comparators selected from neighborhoods with higher concentrations of Black residents than might be expected given the concentration of White residents where Ms. Cheroutes' property was located, *id.* ¶¶ 23-25. Believing the appraisal to be racially discriminatory, Ms. Cheroutes notified Rocket Mortgage of her concerns. *Id.* ¶ 15. Despite Ms. Cheroutes' statement that she did not want the refinancing application to be cancelled, Rocket Mortgage informed her that it was unable to offer her financing. *Id.* ¶ 18.

Ms. Cheroutes filed a complaint with the Colorado Civil Rights Division against Rocket Mortgage, the appraisal company, and the appraiser. *Id.* Pt. I. HUD subsequently reactivated the complaint, *see* 24 C.F.R. § 103.110(a), leading to a civil enforcement action filed in this District in October 2024. Compl. ¶ 43, ECF No. 1; *see generally* Enforcement Compl. That suit, which is pending before Judge Gallagher, alleges that Rocket Mortgage violated § 3605(a) of the Fair Housing Act (as interpreted by 24 C.F.R. § 100.135(d)(1)) when it refused to take remedial steps to cure the appraisal of discrimination after Ms. Cheroutes notified the company of her discriminatory experience. Enforcement Compl. ¶¶ 145, 149. The government and Rocket Mortgage have fully briefed Rocket Mortgage's motion to dismiss, which remains under advisement.

### b. This Suit

On the same day Rocket Mortgage moved to dismiss the Enforcement Suit, it filed the complaint in this case. *See generally* Compl. The complaint adverts directly to the Enforcement Suit, alleging that it embodies a "conflicting approach," *id.* ¶ 9, to a lender's compliance with both the FHA and TILA. Indeed, references to the Enforcement Suit (which Rocket Mortgage describes as the "Third-Party Appraiser Action") appear throughout the complaint. *See, e.g.*, *id.* ¶¶ 10-11, 42, 43, 45, 48, 56. Despite Rocket Mortgage's narrative focus on the Enforcement Suit, the complaint's two counts purport to sweep more broadly than the Enforcement Suit alone. *See id.* ¶¶ 65 ("This declaratory judgment claim is independent and separable from the federal government's single count against Rocket Mortgage as alleged in the [Enforcement Suit]"), 72 (describing HUD's enforcement decision as embodying a substantive "policy"). Count I seeks a declaratory judgment as to the relationship between Rocket Mortgage's respective obligations under the FHA and TILA. *Id.* ¶¶ 57-67. Count II, in turn, alleges that HUD's enforcement action embodies a policy that the agency was required to, but did not, promulgate through notice and comment. *Id.* ¶¶ 68-77.

### LEGAL STANDARDS

"Without jurisdiction . . . the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 7 Wall. 506, 514 (1868)). Challenges to subject-matter jurisdiction are properly raised under Federal Rule of Civil Procedure 12(b)(1). *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 507 (10th Cir. 2023). When

evaluating such a challenge, the Court "must accept the allegations in the complaint as true." *Id.* (describing standards for facial attacks on jurisdiction).  In turn, a complaint should be dismissed under Rule 12(b)(6) if it "fails 'to state a claim upon which relief can be granted[.]'" *Brown v. City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025).  To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quotation omitted).

## ARGUMENT

Rocket Mortgage is far from the first litigant to try to short-circuit an enforcement lawsuit by suing a government agency.  But the Supreme Court long ago held the targets of enforcement action cannot "turn[] prosecutor into defendant before adjudication concludes." *FTC v. Standard Oil Co.*, 449 U.S. 232, 243 (1980).  In keeping with that rule, courts have routinely dismissed similar lawsuits against federal agencies for lack of subject-matter jurisdiction. *E.g.*, *Quicken Loans v. United States*, 152 F. Supp. 3d 938, 948 (E.D. Mich. 2015) (dismissing similar suit brought by Rocket Mortgage's predecessor, *see* Compl. ¶ 31), *Buntrock v. SEC*, 347 F.3d 995, 997 (7th Cir. 2003); *Endo Pharms, Inc. v. FTC*, 345 F. Supp. 3d 554, 566 (E.D. Pa. 2018); *Am. Fin. Benefits Ctr. v. FTC*, No. 17-cv-4817, 2018 WL 3203391 (N.D. Cal. May 29, 2018); *Nerium Int'l, LLC v. FTC*, No. 19-cv-7189, 2020 WL 5217152 (N.D. Ill. Aug. 31, 2020).

The same result should obtain here.  HUD is entitled to federal sovereign immunity as to both Counts I and II because they are not based on final agency action, and as to Count I because Rocket Mortgage has an adequate alternative remedy in the Enforcement Suit.  The Court also lacks subject-matter jurisdiction over Count I because

it does not present a constitutional case or controversy.  If the Court instead concludes that it has jurisdiction over Count I, it should decline to hear that claim.  And Count II, which plausibly alleges neither final agency action nor an APA violation, should be dismissed for failure to state a claim.

## I.    The Court Lacks Subject-Matter Jurisdiction over Counts I & II

Rocket Mortgage's suit fails out of the gate because the Court lacks subject-matter jurisdiction to hear it:  HUD is immune from both counts and Count I raises no constitutional case or controversy.

### a.  HUD is immune from Counts I & II.

"[T]he United States may not be sued without its consent and . . . the existence of consent is a prerequisite for jurisdiction."  *United States v. Mitchell*, 463 U.S. 206, 212 (1983).  The federal government's immunity from suit extends to HUD.  *See Cabeza de Vaca Land & Cattle Co., LLC v. Babbitt*, 58 F. Supp. 2d 1226, 1229 (D. Colo. 1999).  Rocket Mortgage bears the burden of overcoming HUD's sovereign immunity.  *See Fostvedt v. United States*, 978 F.2d 1201, 1203 (10th Cir. 1992).  It has not done so.

In its complaint, Rocket Mortgage does not explicitly identify any purported waiver of sovereign immunity.  The most likely candidate is the APA's general waiver of sovereign immunity at 5 U.S.C. § 702.  But that statutory provision is inapplicable here, where there has been no required final agency action and when the plaintiff has an adequate remedy.

### i.  The APA's waiver of sovereign immunity requires final agency action.

The APA's general waiver of sovereign immunity extends to federal suits "seeking relief other than money damages and stating a claim that an agency or an officer or

employee thereof acted or failed to act in an official capacity or under color of legal authority." 5 U.S.C. § 702.  Although § 702 may waive immunity in suits not brought under the APA, *see Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1233 (10th Cir. 2005) (citation omitted), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199, 216 (2007), its text unambiguously requires that the lawsuit rest on an agency's "act[ion]" or a "fail[ure] to act."  5 U.S.C. § 702.

The APA's requirement of "agency action" (which explicitly includes failure to act) is a prerequisite to judicial review.  5 U.S.C. §§ 704 (defining "[a]ctions reviewable"), 701(b)(2), 551(13) (defining "agency action"); *see Alabama-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 489 (5th Cir. 2014).  And where the plaintiff seeks review of an agency action under the APA alone (and not another statute providing for judicial review), the agency action must be "final."  *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 882 (1990) (citing 5 U.S.C. § 704).

Agency action is "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act[,]" 5 U.S.C. § 551(13), and is final when it has "direct and immediate" impact, when it "marks the consummation of the agency's decisionmaking process," and when it is one by which "rights or obligations have been determined, or from which legal consequences will flow."  *Colo. Farm Bureau Fed'n v. U.S. Forest Serv.*, 220 F.3d 1171, 1173-74 (10th Cir. 2000) (quotations omitted).

### 1.  Count I does not allege agency action.

Count I, which seeks a freestanding declaratory judgment as to the relationship between the FHA and TILA, Compl. ¶¶ 57-67, does not challenge any agency action by

HUD (let alone final agency action), and thus fails to plead a waiver of sovereign immunity under § 702.  *See Clark v. Haaland*, No. 22-2141, 2024 WL 4763759 (10th Cir. Nov. 13, 2024) (affirming dismissal on sovereign-immunity grounds where plaintiffs did "not show how the Complaint 'states a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority.'").  Indeed, Rocket Mortgage makes no effort to carry its burden of "identifying specific federal conduct" that qualifies as agency action.  *Colo. Farm Bureau Fed'n*, 220 F.3d at 1173.  It expressly disclaims reliance on the Enforcement Suit as the basis of its request for declaratory relief. Compl. ¶ 65.  Count I is thus best understood not as challenging agency action, but as launching the type of "broad programmatic attack" on HUD's enforcement program that is not within the APA's ambit of judicial review.  *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (citing *Lujan*, 497 U.S. at 879, 891); *Walmart, Inc. v. U.S. Dep't of Justice*, 21 F.4th 300, 306, 307-11 (5th Cir. 2021) (no final agency action, and thus no waiver of sovereign immunity, in suit seeking nine categories of declaratory relief as to obligations under Controlled Substances Act that might be implicated in future enforcement actions); *Alabama-Coushatta*, 757 F.3d at 490 ("Section 702 therefore does not permit review of 'allegations of past, ongoing, and future harms, seeking wholesale improvement and cover[ing] actions that have yet to occur.'").

Even if Rocket Mortgage's complaint were construed more narrowly, so as not to challenge HUD's entire enforcement program but instead only the enforcement action it has already undertaken, *but see* Compl. ¶ 63 (disclaiming such reliance), the filing of an enforcement action is not a "final agency action" under the APA because it neither

"consummat[es]" a decisionmaking process nor determines legal rights or obligations. *See Quicken Loans*, 152 F. Supp. 3d at 948; *Endo Pharms.*, 345 F. Supp. at 560-61; *Am. Fin. Benefits*, 2018 WL 3203391, at *20-23; *Nerium Int'l*, 2020 WL 5217152, at *11-13; *City of Oakland v. Holder*, 901 F. Supp. 2d 1188, 1195 (N.D. Cal. 2013).[2] Any potential future action enforcing the Fair Housing Act also fails to establish finality, because it remains only speculative at this juncture. *Cf. Colo. Farm Bureau Fed'n*, 220 F.3d at 1174 ("An agency's intent to take action if requested does not constitute final agency action[.]").

### 2. Count II does not allege agency action.

Count II also fails to allege agency action. Unlike in Count I, Rocket Mortgage does purport to identify an agency action in Count II: the agency's alleged promulgation of a "new substantive policy," Compl. ¶ 69, that "requir[es] lenders to take responsibility under the FHA for appraisals performed by independent, third-party appraisers," *id.* ¶ 72, "depart[ing] from the federal government's longstanding practice of requiring lenders to honor appraiser independence," *id.* Rocket Mortgage further alleges that HUD violated the APA when it promulgated this "new substantive policy" without notice and comment. *Id.* ¶ 73. But the APA does not require notice and comment for "policies," it requires notice and comment for "rules"—specifically, substantive (or legislative) rules, which have the force of law. 5 U.S.C. § 553; *Azar v. Allina Health Servs.*, 587 U.S. 566, 573 (2019); *see also* 5 U.S.C. § 551(13) (defining "agency action" to include "the whole or a part of an

---

[2] The Seventh Circuit reached a different conclusion as to finality in similar circumstances in *Buntrock*, but that case does not help Rocket Mortgage since the Seventh Circuit held that a defendant's "attempt to derail the SEC's suit by filing his own suit against the SEC rather than seeking relief in that suit" was improper, had "no basis in law or common sense," and indeed was "seriously frivolous." 347 F.3d at 997.

agency rule"). HUD has not promulgated a new substantive rule here—nor does Rocket Mortgage plausibly allege as much—and so there is no agency action, much less final agency action, that would undergird a waiver of sovereign immunity as to Count II.

Rocket Mortgage's theory rests on its characterization of HUD's "new" rule as "requiring lenders to take responsibility under the FHA for appraisals performed by independent, third-party appraisers." Compl. ¶ 72. It is true that HUD views an FHA violation as possible where a lender "us[es] an appraisal of residential real property in connection with the sale, rental, or financing of any dwelling where the [lender] knows or reasonably should know that the appraisal improperly takes into consideration race[.]" 24 C.F.R. § 100.135(d). But that is not a "new" rule; the regulation was promulgated more than 30 years ago. *Implementation of the Fair Housing Amendments of 1988*, 54 Fed. Reg. at 3287. And Rocket Mortgage does not mention this regulation at all in its complaint. *See generally* Compl.

In this respect, the Enforcement Suit is materially dissimilar from *Shell Offshore, Inc. v. Babbitt*, 238 F.3d 622 (5th Cir. 2001), to which Rocket Mortgage analogizes (even assuming the Fifth Circuit's approach is good law within the Tenth Circuit). *See* Compl. ¶ 71. There, the agency "depart[ed] from [its] previous practice of treating as approved all filed FERC tariffs," *Shell Offshore*, 238 F.3d at 628, a departure made evident at summary judgment by the agency's "internal memoranda and correspondence," *id.* Although the agency's change in practice was effectuated via adjudication, the Fifth Circuit held that its new practice (which was applied to "several . . . producers," *id.* at 628) constituted a substantive rule for APA purposes because it "controlled the adjudicative

13

process." *Id.* at 628, 627-29.  Crucially, the Fifth Circuit distinguished the unwritten policy it held to be a substantive rule from the "appl[ication of] a general regulation to the specific facts of [the plaintiff's] case."  *Id.* at 628.

Here, Rocket Mortgage can only point to the routine application of an existing statute (the FHA) and regulation (24 C.F.R. § 100.135(d)) to the facts of its case.  Despite using the label "policy," it has no evidence of a general change in practice. *But see Shell Offshore*, 238 F.3d at 628.  There is thus no "rule" that would meet the agency action requirement for waiver of sovereign immunity as to Count II.  Nor, for the reasons above given above, *supra* Pt. I.a.i.1, does the filing of an enforcement action—the alleged support for the "new rule" that Rocket Mortgage purports to identify—impliedly create a new rule or constitute a final agency action.  Indeed, enforcement decisions are presumptively unreviewable, not bases for a court to exercise jurisdiction.  *See Better Mkts., Inc. v. U.S. Dep't of Justice*, 83 F. Supp. 3d 250, 256 (D.D.C. 2015) ("Choosing whether and how to enforce a statute is the quintessential type of action 'committed to an agency's absolute discretion.'").

The deficiencies in Rocket Mortgage's claim to waiver of sovereign immunity as to Count II bear a striking resemblance to those the Fifth Circuit deemed dispositive in *Walmart v. Department of Justice*, 21 F.4th 300.  There, in the context of negotiations during an investigation of the company for violations of the Controlled Substances Act, Department of Justice representatives allegedly shared their interpretations of the law. *Id.* at 308.  Walmart argued that the government's negotiating positions were "rules" that satisfied the final agency action requirement to waive sovereign immunity.  Expressly

distinguishing *Shell Offshore*, the Fifth Circuit observed that an agency's negotiating positions "are not binding on the regulated public," *id.* at 308, but instead "are mere legal theories that would succeed or fail in court based on their own merits," *id.* at 309. The same is true of the legal theories HUD and DOJ have set forth in the Charge of Discrimination and the Enforcement Suit. *See id.* There is thus no "rule" here, nor final agency action, that suffices to waive sovereign immunity. *See also id.* ("[I]f Walmart is correct that negotiating positions are rules—despite their being not just devoid of legal force but also unwritten and nonpublic—it is unclear when a statement of legal opinion by a government agent would ever not be a rule. We reject that expansive reading of the definition of 'rule.'").

### ii. The APA's waiver of sovereign immunity does not apply where a plaintiff has an adequate alternative remedy.

Even where final agency action exists, "the APA excludes from its waiver of sovereign immunity claims for which an adequate remedy is available elsewhere." *Fornaro v. James*, 416 F.3d 63, 66 (D.C. Cir. 2005); *Glapion v. Castro*, 79 F. Supp. 3d 1207, 1215 (D. Colo. 2015) ("[T]he APA only provides judicial review 'for which there is no other adequate remedy in a court.'").

### 1. The Enforcement Suit provides an adequate alternative remedy to Count I.

The simultaneous defense of a parallel enforcement proceeding presents an adequate alternative opportunity to obtain the remedy Rocket Mortgage seeks. *See Buntrock*, 347 F.3d at 997; *FTC v. Am. Vehicle Prot. Corp.*, No. 22-cv-60298-RAR, 2022 WL 14638465, at *5 (S.D. Fla. Oct. 25, 2022) ("AVP raises Counts II, III, and IV their

Motion to Dismiss [an enforcement suit]—thereby demonstrating that AVP has other adequate remedies in court."); *Nerium Int'l*, 2020 WL 5217152, at *5; *Am. Fin. Benefits Ctr.*, 2018 WL 3203391, at *9. The existence of an adequate remedy is thus an independent basis for the Court to conclude that no waiver of sovereign immunity exists as to Count I.

Rocket Mortgage may respond that it seeks relief far broader than what an individual Fair Housing Act suit can provide. But as explained below, that request is not ripe, and thus lies outside the judicial power to grant. There is, in other words, only one remedy conceivably available: a holding that, under the particular circumstances giving rise to the Enforcement Suit, TILA offers Rocket Mortgage a defense to the government's FHA claim. Because that remedy is both adequate and available in the Enforcement Suit, the APA does not permit Rocket Mortgage to seek it here.

### b. Count I does not state a constitutional case or controversy.

The Declaratory Judgment Act authorizes the Court to grant declaratory relief only "[i]n a case of actual controversy within its jurisdiction." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) (quoting 28 U.S.C. 2201(a)). An "actual controversy," in turn, "refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *Id.* at 127. This means showing "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Travelers Cas. Ins. Co. of Am. v. A-Quality Auto Sales, Inc.*, 98 F.4th 1307, 1314 (10th Cir. 2024) (quoting *MedImmune, Inc.*, 549 U.S. at 127).

Rocket Mortgage has asked the Court to declare, in the abstract, (1) that TILA's

appraisal-independence provisions take precedence over the FHA; (2) that TILA demands a particular interpretation of a HUD regulation (on which the government does not rely in the Enforcement Action); and (3) that a generic action ("relying on an appraisal provided by an independent, third-party appraiser") categorically does not violate the FHA. Compl. at 25. Read broadly, as Rocket Mortgage has framed its request, Count I presents no issue fit for judicial resolution, without which Rocket Mortgage would face hardship. It is thus unripe. Read more narrowly, as only pertaining to the facts of the Enforcement Suit (a theory Rocket Mortgage expressly disclaims), Rocket Mortgage's request for relief would not resolve that entire controversy. For both of these independent reasons, the Court lacks subject-matter jurisdiction to hear Count I.

### i. Count I is unripe.

A case is of "sufficient immediacy and reality" to warrant declaratory relief only when it is ripe. *Travelers Cas. Ins. Co.*, 98 F.4th at 1314. "[R]ipeness considers timing: whether events have progressed far enough to be sure that declaratory judgment will resolve a live dispute with practical consequences." *Id.* (citation omitted). Two factors determine ripeness: "the fitness of the issue for review" and "'the hardship to the parties' of withholding judicial review." *Id.* (citation omitted).

*Fitness.* The fitness prong considers "whether determination of the merits turns upon strictly legal issues or requires facts that may not yet be sufficiently developed," as well as "whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* (citations omitted). Both of these inquiries disfavor Rocket Mortgage.

17

As to the question of factual development, the declarations Rocket Mortgage seeks are only possible to grant in a concrete setting. *But see* Compl. ¶ 63. Part (a) of Rocket Mortgage's prayer for relief seeks a declaration that "the FHA does not require Rocket Mortgage to influence the independent judgment of an appraiser to 'correct' or 'remediate' an appraisal . . . perceived to be based on a consideration prohibited by the FHA, as the exercise of such influence is prohibited by TILA's appraiser independence requirements." Compl. at 25. Facially, this cannot be correct: the same statute that Rocket Mortgage alleges to trump the FHA categorically—TILA—itself permits a lender like Rocket Mortgage to ask the appraiser to "[c]onsider additional, appropriate" information, to "[p]rovide further detail, substantiation, or explanation," or to "[c]orrect errors in the appraisal report," 15 U.S.C. § 1639e(c)(1)-(3). This means that the relationship between the FHA and TILA necessarily depends on particular facts—what information the appraiser used to support his valuation, what the lender knew at the time it relied on the appraisal, and what steps (if any) the lender took to remedy problems.

So too for parts (b) and (c) of the prayer for relief, which seek declarations that "Rocket Mortgage does not have 'control [over] or any other legal responsibility' for an independent appraiser under 24 C.F.R. § 100.7," and that "Rocket Mortgage is not liable under the [FHA] for relying on an appraisal provided by an independent, third-party appraiser." Compl. at 25. As to part (b), the cited regulation itself contemplates liability varying according to the degree of "control or any other legal responsibility" a lender has for a third party's actions. *See* 24 C.F.R. § 100.7(a)(1)(iii). Clearly, then, under some circumstances the regulation contemplates control over third parties sufficient to establish

18

liability.  The question becomes *what* circumstances—a question impossible to answer absent a concrete factual setting.  And as to part (c), HUD's implementing regulations (which are not challenged here) contemplate otherwise, 24 C.F.R. § 100.135(d), as do several judicial decisions, *e.g.*, *Connolly*, 685 F. Supp. 3d at 325.  In the end, it is impossible to say whether Rocket Mortgage's statements are correct unless and until "all the relevant facts . . . are known or knowable." *Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1379 (10th Cir. 2011).

For similar reasons, Count I is an impermissible attempt to seek the Court's opinion on "uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Travelers Cas. Ins. Co.*, 98 F.4th at 1314.  Rocket Mortgage concedes that "instances of obvious, intentional discrimination" (of the sort that gave rise to the Enforcement Suit) are rare.  Compl. ¶ 15.  Perhaps for that reason, Rocket Mortgage does not point to any enforcement action implicating the FHA and TILA other than the suit against it pending in this District.  It instead refers to a generalized concern of future enforcement stemming from a statement made by a former government official, in which the official expressed the Department's "ongoing efforts to bring an end to appraisal bias."  Compl. ¶¶ 46-47.  That statement falls well short of showing a likelihood of the TILA defense arising again in a materially similar posture.

Judicial review of Rocket Mortgage's asserted "pure questions of law," Compl. ¶ 63, would, in sum, "stand on a much surer footing in the context of an application to a specific factual framework." *Utah v. U.S. Dep't of Interior*, 535 F.3d 1184, 1195-96 (10th Cir. 2008); *see also Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937); *Public Serv.*

19

*Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 244 (1952).

    *Hardship.*  Rocket Mortgage also faces no cognizable hardship from waiting for a concrete application of the FHA and TILA.  *Tex. Brine Co., LLC v. Occidental Chem. Corp.*, 879 F.3d 1224, 1230 (10th Cir. 2018) (court must independently consider hardship).  Notably, Rocket Mortgage does not point to the financial burdens of litigation while the validity of its TILA defense is adjudicated in the Enforcement Suit, which are unavoidable and in any event not cognizable.  *See Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 734-35 (1998) ("[T]he Court has not considered this kind of litigation cost saving sufficient by itself to justify review in a case that would otherwise be unripe."); *Standard Oil*, 449 U.S. at 244 ("[T]he expense and annoyance of litigation is 'part of the social burden of living under government.'" (citation omitted)).

    Instead, Rocket Mortgage claims "the impossible challenge of attempting to meet the government's conflicting theories and requirements," Compl. ¶ 64, as hardship.  This threadbare statement does not allege that the company has been forced "to make significant changes in [its] everyday business practices" under the threat of "strong sanctions," *see Abbott Lab'ys v. Gardner*, 387 U.S. 136, 154 (1967), such that preenforcement judicial review might be appropriate.  As the government details in its opposition to Rocket Mortgage's motion to dismiss, liability under the FHA for reliance on a discriminatory appraisal that the company knew or had reason to know was discriminatory is well established under the statute, regulation, and case law—and does not conflict with TILA.  Resp. to Mot. to Dismiss at 7-8, *United States v. Rocket Mortgage*, No. 1:24-cv-2915 (D. Colo. Jan. 9, 2025).  The theory advanced by the government in the

Enforcement Suit falls well within these familiar contours.  Rocket Mortgage is not faced with an "impossible challenge," in other words, but business as usual.  *See Asante v. Azar*, 436 F. Supp. 3d 215, 226 (D.D.C. 2020).

### ii. Relief under Count I would not resolve an entire case or controversy.

Independently of the ripeness requirement, a case or controversy is not present in a declaratory suit (and thus jurisdiction does not exist) where the declaration requested would decide only "a single issue in a dispute that must await another lawsuit for complete resolution." *Calderon v. Ashmus*, 523 U.S. 740, 748 (1998).  Here, Rocket Mortgage asks the Court to decide only one legal issue—a potential defense in a future (or current) enforcement suit—that would not itself decide the ultimate issue of liability under the FHA. Under these circumstances, declaratory relief may not be awarded.  *Id.* at 749 (declaratory suit dismissed for lack of jurisdiction where plaintiff, a potential habeas petitioner, sought a declaration only as to the substantive law that would govern a future habeas petition); *Coffman v. Breeze Corp.* 323 U.S. 316, 322-24 (1945) (declaratory relief unavailable to adjudicate potential defense in future litigation); *Wycoff Co.*, 344 U.S. at 246 ("[W]hen the [declaratory] request is not for ultimate determination of rights but for preliminary findings and conclusions intended to fortify the litigant against future regulation, it would be a rare case in which the relief should be granted.").

### II.    Counts I & II Otherwise Merit Dismissal

Even absent the jurisdictional problems identified above, Rocket Mortgage is not entitled to relief.  Count I presents no good reason for the Court to exercise its discretionary jurisdiction under the Declaratory Judgment Act, and Count II fails to state

a claim to relief.

### a.  The Court should decline to exercise jurisdiction over Count I.

Even if the Court had subject-matter jurisdiction to consider Count I, it should nevertheless decline to exercise it here.  *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) (declaratory jurisdiction is discretionary).  The Court is free to consider a wide range of "equitable, prudential, and policy arguments" in deciding whether to hear a declaratory claim.  *MedImmune, Inc.*, 549 U.S. at 136.  First and foremost, this suit impermissibly seeks to circumvent the limitations of the APA and should be dismissed on that basis.  Moreover, the Tenth Circuit's "baseline" first-to-file rule suggests dismissal is appropriate.  The multi-factor test the Tenth Circuit has adopted to guide the Court's exercise of its discretion points toward dismissal, too.  *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994).  For any and all of the following reasons, the Court should decline to exercise jurisdiction under the Declaratory Judgment Act.

### i.  Declaratory suits may not be used to circumvent enforcement proceedings.

Courts have long recognized that a plaintiff may not evade the APA's finality requirement and other jurisdictional prerequisites merely by seeking the same relief under the Declaratory Judgment Act.  If agency action "is not final so as to be reviewable under the Administrative Procedure Act [a plaintiff] is not helped on the question of jurisdiction by the Declaratory Judgment Act . . . for that Act does not afford an independent basis for jurisdiction."  *Cont'l Bank & Tr. Co. v. Martin*, 303 F.2d 214, 215 (D.C. Cir. 1962).  Numerous cases apply this principle.  For example, in *Volvo GM Heavy Truck Corp. v. U.S. Department of Labor*, the Fourth Circuit held that a plaintiff could not "bypass" the

APA requirements "by simply bringing declaratory judgment actions in federal court."  118 F.3d 205, 210 (4th Cir. 1997) (quoting *Heckler v. Ringer*, 466 U.S. 602, 621 (1984)); *see also Gen. Fin. Corp. v. FTC*, 700 F.2d 366, 368 (7th Cir. 1983); *Jama v. DHS*, 760 F.3d 490, 493, 497 (6th Cir. 2014); *Town of Sanford v. United States*, 140 F.3d 20, 22 (1st Cir. 1998). Following this principle, Count I should be dismissed.

### ii.  Dismissal would honor the first-to-file rule.

"The first-to-file rule is a 'well-established doctrine that encourages comity among federal courts of equal rank.'"  *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 679 F. Supp. 2d 1287, 1296 (D. Kan. 2010).  The Tenth Circuit has "adopted the first-to-file rule as a baseline."  *Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*, 910 F.3d 1118, 1124 (10th Cir. 2018).  Under that rule, the Court must "consider three factors:  '(1) the chronology of events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake.'"  *Id.*  The Court may also consider other relevant equitable factors.  *Id.* at 1127.  Where another earlier-filed case raises similar issues as between similar parties, the Court may dismiss the case pending before it.  *Wallace B. Roderick Revocable Living Tr.*, 679 F. Supp. 2d at 1299.

All three mandatory factors favor dismissal here.  The government filed the Enforcement Suit before Rocket Mortgage filed its complaint in this suit.  Although the parties are not nominally identical, they are so in substance:  the Enforcement Suit was brought by the United States based on the Charge of Discrimination issued by HUD, and HUD is the Defendant in this case.  And reduced to their essence, the issues Rocket Mortgage raises here will be resolved in the Enforcement Suit.  It is not possible within

the limits of Article III for a federal court to opine on the abstract relationship between the FHA and TILA, and HUD has not actually promulgated any substantive rule subject to notice-and-comment.   All that remains, then, is Rocket Mortgage's liability in the Enforcement Suit.

Nor are there equitable considerations, like a "misuse of litigation" or forum shopping, that would favor the Court retaining jurisdiction here.  *See Jim v. CoreCivic of Tenn., LLC*, No. CIV 20-0618 JB/JFR, 2021 WL 4990084, at *11 (D.N.M. Oct. 27, 2021). The government brought the Enforcement Suit in the course of its ordinary enforcement authority, in an appropriate forum—indeed, one Rocket Mortgage apparently concedes is appropriate, in light of its filing suit in the District of Colorado.

### iii. A declaratory judgment would not settle the present or future controversies.

For the reasons elaborated in Part I.b.ii, *supra*, the declarations Rocket Mortgage seeks would not put to rest the question of the lender's liability under the FHA.  To the contrary, they would, at most, afford Rocket Mortgage a single defense to be employed in enforcement actions of the FHA present and future.  The Declaratory Judgment Act is not an appropriate vehicle for that end.  *Morgan Drexen, Inc. v. CFPB*, 979 F. Supp. 2d 104, 116 (D.D.C. 2013) ("[T]he anticipation of defenses is not ordinarily a proper use of the declaratory judgment procedure.").  To the contrary, permitting this suit for declaratory relief to proceed would incentivize any regulated party to bring suit to forestall a filed (or soon-to-come) enforcement action, hamstringing federal agencies in their ability to enforce federal law and wasting judicial resources along the way.

### iv. A declaratory judgment would not serve a useful purpose in clarifying the relationship between the FHA and TILA.

Rocket Mortgage alleges that a declaratory judgment as to its obligations under the FHA and TILA will assist it to act lawfully in the future, faced with what it perceives to be an increased risk of FHA enforcement.  Compl. ¶ 64.  But as described above, *see supra* Pt. I.b.i., there is no obvious or facial conflict between a lender's obligation under the FHA not to discriminate on the basis of race and its parallel obligation under TILA to honor appraiser independence, as that term is specifically defined.

The Enforcement Suit proves that the FHA and TILA can be read in harmony.  The government has alleged that Rocket Mortgage "relie[d] on an appraisal it [knew was] likely based on racial discrimination to set terms for or refuse to extend a loan," thus "itself discriminating on the basis of race" in violation of the FHA.  Resp. to Mot. to Dismiss at 7, *United States v. Rocket Mortgage*, No. 1:24-cv-2915-GPG (D. Colo. Jan. 9, 2025).  In its motion to dismiss, Rocket Mortgage argued that TILA immunized it from liability.  Mot. to Dismiss at 7-8, *United States v. Rocket Mortgage*, No. 1:24-cv-2915-GPG (D. Colo. Dec. 4, 2024).  But as the government explained in response, the very same statute (TILA) permitted Rocket Mortgage to take corrective action, including by "asking [the] appraiser to . . . [c]onsider additional, appropriate property information, including the consideration of additional comparable properties to make or support an appraisal[;] [p]rovide further detail, substantiation, or explanation for the appraiser's value conclusion[;] [or] correct errors in the appraisal report."  15 U.S.C. § 1639e(c).

A categorical declaration as to the interaction between the FHA and TILA of the sort Rocket Mortgage seeks would violate the Supreme Court's instruction to read two

statutes "to give effect to each, if [a court] can do so while preserving their sense and purpose." *Watt v. Alaska*, 451 U.S. 259, 267 (1981). Any more refined adjudication of the relationship between the two statutes, in turn, would require Rocket Mortgage to plead specific facts, on which it has disclaimed reliance here. Compl. ¶ 65. Accordingly, a declaratory judgment would serve no useful purpose in clarifying Rocket Mortgage's legal obligations as a general matter, divorced from the Enforcement Suit.

### v. This suit seeks to gain an improper procedural advantage.

The circumstances under which Rocket Mortgage filed this suit imply that it did so as impermissible "procedural fencing." *See St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1170 (10th Cir. 1995) (upholding denial of jurisdiction in declaratory judgment action used for "procedural fencing" as "a race to res judicata"). Although Rocket Mortgage filed this suit after the Enforcement Suit was filed, and thus may not be guaranteed a faster decision from a *district court* on its FHA liability, an adverse decision here will permit it immediate appeal to the Tenth Circuit. *See Mohamed v. Jones*, 100 F.4th 1214, 1217 (10th Cir. 2024) ("Federal appellate jurisdiction is generally limited to appeals from 'final' district court orders and orders certified for interlocutory appeal." (citing 28 U.S.C. § 1291)); *Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1037 (10th Cir. 2022) ("Generally, any error a district court makes in failing to apply an affirmative defense foreclosing liability can be reviewed and corrected after final judgment has been entered in the case."). A favorable result in the Tenth Circuit, in turn, would bind the court in the Enforcement Suit. Rocket Mortgage's filing of this suit is thus presumably an attempted end-run around the general prohibition on interlocutory appeals, which the

Court should reject.

> **vi. Enforcement actions, including the Enforcement Suit, offer a superior forum for adjudicating Rocket Mortgage's TILA defense.**

Under Tenth Circuit law, a "central question" for the Court to evaluate in deciding whether to exercise jurisdiction under the Declaratory Judgment Act is "which forum can better resolve the controversy." *United States v. City of Las Cruces*, 289 F.3d 1170, 1186-87 (10th Cir. 2002). Here, the forum factor tilts in favor of declining jurisdiction. The Enforcement Suit offers the appropriate setting—*i.e.*, raises particular facts necessary to a constitutional adjudication of Rocket Mortgage's FHA liability. Moreover, the same issues are already fully briefed in the Enforcement Suit, permitting a speedier decision on those facts.

Alternatively, and to the extent Rocket Mortgage maintains that its request for declaratory relief in this suit sweeps more broadly than the Enforcement Suit currently pending in this District, a future FHA enforcement action (if one is ever filed against Rocket Mortgage) will serve as a superior forum for adjudicating any import of TILA in such a case. That is so because the relationship between the FHA and TILA is inescapably fact-bound and fact-dependent. *See supra* Pt. I.b.i. Because it is impossible to adjudicate the relationship between these two statutes in the abstract, it would be inefficient and improvident for the Court to exercise its jurisdiction here.

> **b. Count II fails to state a claim.**

In Count II, Rocket Mortgage alleges that HUD failed to comply with the notice-and-comment procedure of the APA when it promulgated a purported "new substantive

policy" of enforcing the FHA against lenders who rely on known discriminatory appraisals. *See* Compl. ¶¶ 69. In addition to the jurisdictional deficiencies, *see supra* Pt. I, Rocket Mortgage has failed to state a claim under the APA. First, the APA establishes a cause of action that is generally available only for final agency action. *Corner Post, Inc. v. Bd. of Govs. of Fed. Res. Sys.*, 603 U.S. 799, 808 (2024); 5 U.S.C. § 704. As explained above, Count II does not allege final agency action (for immunity or cause of action purposes). Second—relatedly, but distinctly—the specific violation Rocket Mortgage alleges in Count II is a failure to comply with notice-and-comment procedures. Compl. ¶ 73. But those procedures are only required for substantive rules. *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96-97 (2015). And again, as detailed above, Rocket Mortgage has not plausibly alleged that HUD promulgated a substantive rule (as opposed to an enforcement action undertaken under established standards). For either or both of these reasons, Rocket Mortgage has failed to state a claim in Count II, which should be dismissed under Rule 12(b)(6). *See Broadgate Inc. v. USCIS*, 730 F. Supp. 2d 240, 247 (D.D.C. 2010) ("In short, the Memorandum does not constitute final agency action subject to judicial review and the notice and comment requirements under the APA. Counts I, III, IV, and V alleging violations of the APA must therefore be dismissed for failure to state a claim under [5 U.S.C.] § 704.").

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Dated:  March 4, 2025                    Respectfully submitted,

                                         YAAKOV M. ROTH
                                         Acting Assistant Attorney General
                                         Federal Programs Branch

                                         LESLEY FARBY
                                         Deputy Director
                                         Federal Programs Branch

                                         s/ Simon Gregory Jerome
                                         **Simon Gregory Jerome**
                                         Trial Attorney
                                         United States Department of Justice
                                         Civil Division, Federal Programs Branch
                                         1100 L Street, N.W.
                                         Washington, D.C. 20005
                                         Telephone: (202) 514-2705
                                         E-mail: simon.g.jerome@usdoj.gov
                                         Attorney for Defendant United States
                                         Department of Housing and Urban
                                         Development