## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civ. A. No. 1:24-cv-3368-CNS

ROCKET MORTGAGE, LLC,

Plaintiff,

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,

Defendant.

---

### PLAINTIFF ROCKET MORTGAGE, LLC'S OPPOSITION TO
### DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT (ECF NO. 18)

## TABLE OF CONTENTS

BACKGROUND ................................................................................................... 4

STANDARD OF LAW ......................................................................................... 6

ARGUMENT ........................................................................................................ 6

    I.     There is no basis for dismissing Count I. ...................................................... 6

        A.  Sovereign immunity does not bar Count I. ...................................................... 7

            i.      Section 702 of the APA waives HUD's sovereign immunity
because HUD's policy is an agency action that has caused
Rocket Mortgage to suffer legal wrong. ................................................. 9

            ii.     HUD's policy of requiring lender correction of purportedly
discriminatory valuations is a final agency action. ............................... 12

        B.  Count I is ripe. ................................................................................................ 15

            i.      Count I is fit for judicial decision. ......................................................... 16

            ii.     Absent immediate judicial review of Count I, Rocket
Mortgage will continue to suffer hardship. ........................................... 18

        C.  This Court should exercise its discretion to consider Count I on the
merits. ............................................................................................................ 19

            i.      A declaratory judgment would settle the controversy and
clarify Rocket Mortgage's legal obligations as to whether
TILA permits a lender to "correct" an independent appraisal
for perceived bias or alleged discrimination by the appraiser. ............ 21

            ii.     Rocket Mortgage does not seek a declaratory judgment for
improper procedural purposes, and there is no better
alternative remedy. ............................................................................... 25

    II.    Count II plausibly alleges that HUD failed to engage in required notice-
and-comment rulemaking. .......................................................................... 28

    CONCLUSION ................................................................................................ 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al Otro Lado, Inc. v. McAleenan,*
   394 F. Supp. 3d 1168 (S.D. Cal. 2019) ..................................................... 13

*Ala.-Coushatta Tribe of Tex. v. United States,*
   757 F.3d 484 (5th Cir. 2014) .......................................................... 7, 8, 9

*Allstate Ins. Co. v. River Cliff Realty, LLC,*
   No. 1:22-cv-01545, 2023 WL 3321366 (D. Colo. May 9, 2023) ............................... 27

*Amadei v. Nielsen,*
   348 F. Supp. 3d 145 (E.D.N.Y. 2018) ..................................................... 13

*ARW Expl. Corp. v. Aguirre,*
   947 F.2d 450 (10th Cir. 1991) ........................................................... 20

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ...................................................................... 6

*Audubon of Kan., Inc. v. U.S. Dep't of Interior,*
   67 F.4th 1093 (10th Cir. 2023) .......................................................... 11

*Azar v. Allina Health Servs.,*
   587 U.S. 566 (2019) ..................................................................... 29

*Bear Creek Bible Church v. EEOC,*
   571 F. Supp. 3d 571 (N.D. Tex. 2021) .................................................... 10

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ...................................................................... 6

*Bellco Credit Union v. U.S.,*
   2009 WL 189954 (D. Colo. Jan. 27, 2009) ................................................ 15

*Bennett v. Spear,*
   520 U.S. 154 (1997) ..................................................................... 13

*Braidwood Mgmt., Inc. v. EEOC,*
   70 F.4th 914 (5th Cir. 2023) ................................................... 9, 10, 17, 19

*Brillhart v. Excess Ins. Co. of Am.*,
  316 U.S. 491 (1942) ................................................................................... 22

*Calderon v. Ashmus*,
  523 U.S. 740 (1998) ................................................................................... 23

*Chamber of Com. v. Reich*,
  74 F.3d 1322 (D.C. Cir. 1996) ...................................................................... 7

*Clean Air Implementation Project v. EPA*,
  150 F.3d 1200 (D.C. Cir. 1998) .................................................................. 16

*Cochran v. Hewlett-Packard Co.*,
  No. 20-cv-01235, 2021 WL 826007 (D. Colo. Mar. 4, 2021) .................... 28

*Coffman v. Breeze Corps.*,
  323 U.S. 316 (1945) ................................................................................... 23

*Edwards v. Tenn. Valley Fed. Credit Union*,
  No. 1:23-cv-233, 2024 WL 2981180 (E.D. Tenn. June 13, 2024) ............ 24

*Guardian Fed. Sav. & Loan Ass'n v. Fed. Sav. & Loan Ins. Corp.*,
  589 F.2d 658 (D.C. Cir. 1978) .................................................................... 29

*Hisp. Affs. Project v. Acosta*,
  901 F.3d 378 (D.C. Cir. 2018) .............................................................. 11, 12

*Liberty Mut. Pers. Ins. Co. v. Prutsman*,
  No. 1:23-cv-02615, 2024 WL 3341002 (D. Colo. June 10, 2024) ............ 21

*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871 (1990) .................................................................................. 8, 9

*M.S. v. Premera Blue Cross*,
  118 F.4th 1248 (10th Cir. 2024) ................................................................ 25

*Merit Energy Co., LLC v. Haaland*,
  Nos. 21-8047, 21-8048, 2022 WL 17844513 (10th Cir. Dec. 22, 2022) ... 18

*Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n*,
  685 F.3d 977 (10th Cir. 2012) .................................................................... 24

*Morgan Drexen, Inc. v. CFPB*,
  979 F. Supp. 2d 104 (D.D.C. 2013) ...................................................... 23, 24

*N. Mill St., LLC v. City of Aspen*,
  6 F.4th 1216 (10th Cir. 2021) ................................................................. 15

*N.H. Ins. Co. v. TSG Ski & Golf, LLC*,
  No. 21-cv-01873, 2022 WL 1184547 (D. Colo. Apr. 21, 2022) ................ 26

*Oklahoma v. U.S. Dep't of Health & Hum. Servs.*,
  107 F.4th 1209 (10th Cir. 2024) ............................................................. 12

*Owners Ins. Co. v. Keeton*,
  No. 1:20-cv-02950, 2021 WL 5998526 (D. Colo. Dec. 20, 2021) ............ 22

*Park Lake Res. Ltd. Liab. Co. v. U.S. Dep't of Agric.*,
  197 F.3d 448 (10th Cir. 1999) ................................................................. 15

*Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*,
  793 F.3d 1177 (10th Cir. 2015) ............................................................... 20

*Rocky Mountain Oil & Gas Ass'n v. Watt*,
  696 F.2d 734 (10th Cir. 1982) ................................................................. 18

*Simmat v. U.S. Bureau of Prisons*,
  413 F.3d 1225 (10th Cir. 2005) ................................................................. 7

*Simmonds v. INS*,
  326 F.3d 351 (2d Cir. 2003) ................................................................... 15

*Sinclair Wyo. Refin. Co., LLC v. EPA*,
  72 F.4th 1137 (10th Cir. 2023) ............................................................... 12

*Slater Park Land & Livestock, LLC v. U.S. Army Corps. of Engineers*,
  423 F. Supp. 3d 1076 (D. Colo. 2019) ...................................................... 8

*Sorenson Commc'ns, Inc. v. FCC*,
  567 F.3d 1215 (10th Cir. 2009) ............................................................... 10

*St. Paul Fire & Marine Ins. Co. v. Runyon*,
  53 F.3d 1167 (10th Cir. 1995) ................................................................. 19

*State Farm Fire & Cas. Co. v. Mhoon*,
  31 F.3d 979 (10th Cir. 1994) ....................................................... 20, 24, 25

*State Farm Mut. Auto. Ins. Co. v. Mid-Continent Cas. Co.*,
  518 F.2d 292 (10th Cir. 1975) ................................................................. 23

*Tennessee v. Dep't of Educ.*,
    104 F.4th 577 (6th Cir. 2024)................................................................. 14

*Texas v. EEOC*,
    933 F.3d 433 (5th Cir. 2019)................................................................. 14

*Travelers Cas. Ins. Co. of Am. v. A-Quality Auto Sales, Inc.*,
    98 F.4th 1307 (10th Cir. 2024).............................................................. 22

*Trudeau v. FTC*,
    456 F.3d 178 (D.C. Cir. 2006)............................................................ 7, 8

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
    578 U.S. 590 (2016)............................................................................ 13

*United States v. Cabral*,
    926 F.3d 687 (10th Cir. 2019)......................................................... 15, 16

*Utah v. Babbitt*,
    137 F.3d 1193 (10th Cir. 1998)............................................................... 6

*Venetian Casino Resort, L.L.C. v. EEOC*,
    409 F.3d 359 (D.C. Cir. 2005)........................................................ 18, 19

*Venetian Casino Resort, L.L.C. v. EEOC*,
    530 F.3d 925 (D.C. Cir. 2008)............................................................. 13

*Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*,
    910 F.3d 1118 (10th Cir. 2018)....................................................... 27, 28

*Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*,
    679 F. Supp. 2d 1287 (D. Kan. 2010)................................................... 27

*Walmart Inc. v. U.S. Dep't of Just.*,
    21 F.4th 300 (5th Cir. 2021)................................................................. 11

*Wayaka Perfection, LLC v. Youngevity Int'l, Inc.*,
    No. 16-cv-315, 2017 WL 5159737 (D. Utah Nov. 7, 2017)...................... 27

*Wayne Land & Min. Grp. LLC v. Del. River Basin Comm'n*,
    894 F.3d 509 (3d Cir. 2018)................................................................. 17

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995)............................................................................ 22

**Statutes**

5 U.S.C. § 551(13) ................................................................. 7, 9, 10

5 U.S.C. § 553(b) .................................................................. 1, 5, 29

5 U.S.C. § 702 ........................................................................ 6, 7

5 U.S.C. § 704 ....................................................................... 9, 12

15 U.S.C. § 1639e ............................................................... 1, 10, 16

15 U.S.C. § 1639e(b)(1) ................................................................ 4

15 U.S.C. § 1639e(c) ............................................................... 16, 24

15 U.S.C. § 1639e(c)(3) ............................................................ 16, 25

28 U.S.C. § 1331 ....................................................................... 8

42 U.S.C. § 3612(b) ................................................................... 8

42 U.S.C. § 3612(o) ................................................................... 8

**Other Authorities**

24 C.F.R. § 100.135(d) ........................................................... 14, 30

*Error*, Black's Law Dictionary (12th ed. 2024) ................................. 25

*Error*, Merriam-Webster Dictionary,
    https://www.merriam-webster.com/dictionary/error ......................... 25

Wright & Miller, Federal Practice & Procedure § 2759 ...................... 23

This action challenges a Department of Housing and Urban Development ("HUD") policy that requires a mortgage lender to "correct" a residential appraisal conducted by an independent, third-party appraiser when there is perceived or alleged bias or discrimination by the appraiser. This policy is diametrically opposed to the federal legal requirement that the lender remain at arm's length from the appraiser and the appraisal. Indeed, the federal Truth in Lending Act (TILA) makes it unlawful for a mortgage lender "to engage in any act or practice that violates appraisal independence," including "instruct[ing]" or "induc[ing]" an appraiser to base an appraisal "on any factor other than the independent judgment of the appraiser." 15 U.S.C. § 1639e. HUD's policy, which purportedly furthers the aims of the Fair Housing Act (FHA), puts mortgage lenders between "a rock and hard place" with respect to compliance with TILA's appraiser independence requirements. This is because a lender's "correction" of an appraisal means, by definition, that the appraisal will be based on factors other than the appraiser's independent judgment (*e.g.*, the lender's "corrected" appraisal value or the lender's "instruction" or "inducement" to the appraiser to correct that value).

Faced with this conflicting and untenable reality arising from HUD's policy, Rocket Mortgage filed this lawsuit to obtain judicial clarity on whether that policy requires Rocket Mortgage to violate TILA's appraiser independence requirements. Because HUD's policy imposes a new legal obligation on mortgage lenders like Rocket Mortgage to "correct" appraisals, and HUD did not seek public input on that policy, Rocket Mortgage also seeks to enforce the notice-and-comment requirements of the Administrative Procedure Act, 5 U.S.C. § 553(b).

Recognizing that it has no meritorious arguments for dismissal of Rocket Mortgage's actual complaint, HUD's motion improperly reframes it.  Def.'s Mot. to Dismiss Pl.'s Compl. ("MTD") (ECF No. 18) (Mar. 4, 2025).  According to HUD, this lawsuit is about nothing more than the government's FHA suit against Rocket Mortgage.  HUD is wrong.  That suit carries out HUD's policy by seeking to hold Rocket Mortgage liable for an alleged failure to correct the appraisal of an independent, third-party appraiser who is perceived or alleged to be biased or engaged in appraisal discrimination.  Compl. ¶ 149, *United States v. Rocket Mortg. LLC*, No. 1:24-cv-2915 (D. Colo. Oct. 21, 2024) ECF No. 1 (the "Third-Party Appraiser Action").  But as demonstrated in Rocket Mortgage's actual complaint, this lawsuit is about HUD's policy and not one particular suit.  HUD's motion tellingly ignores the numerous factual allegations in the complaint that demonstrate the existence and substance of that policy.

Stripped of its rhetoric, HUD's motion provides no basis for dismissal because its arguments are unmoored from the allegations in Rocket Mortgage's complaint.  To start, sovereign immunity does not bar either Count I or Count II.  Section 702 of the APA waives HUD's sovereign immunity for any claims relating to HUD's policy.  Rocket Mortgage has pleaded an "agency action" that qualifies for Section 702's waiver of sovereign immunity—and a "final" one at that, as it carries the legal consequence of requiring lenders to actively police and "correct" allegedly discriminatory appraisals.

For similar reasons, HUD's arguments for dismissing Count I also miss the mark.  HUD asserts the claim is not prudentially ripe, but even HUD does not resist the conclusion that the questions presented by Count I are pure issues of law that are fit for judicial

resolution now.  HUD suggests that Rocket Mortgage's claims require factual develop-ment, but it does not identify a single fact that is actually necessary to resolve the conflict that Rocket Mortgage seeks to resolve through Count I.  Indeed, the very fact that HUD chooses to argue the merits of those questions in its Motion to Dismiss demonstrates that they are, in fact, fit for the Court to resolve now.  And absent immediate judicial review, Rocket Mortgage will continue to suffer the hardship of being forced to decide between violating HUD's policy or violating TILA.  There is also no discretionary reason for this Court not to consider Count I:  despite HUD's best efforts to persuade this Court other-wise, this case is not an end-run around the Third-Party Appraiser Action, especially as the government in that case is now only halfheartedly defending its "correction" theory of liability.

As for Count II, HUD contends that Rocket Mortgage has failed to allege a claim because the APA's notice-and-comment requirements apply only to "rules," and a policy is not a rule.  But it is content, not HUD's after-the-fact and self-serving labeling, that determines whether Section 553(b)'s notice-and-comment requirements apply.  HUD's policy imposed new legal obligations on lenders to police and correct appraisals for al-leged appraiser bias or discrimination.  That makes it a rule that requires a rulemaking. Had HUD engaged in such rulemaking, mortgage lenders could have cautioned HUD that its policy creates an impossible compliance dilemma, HUD could have heeded that cau-tion, and this lawsuit could have been avoided.

For these and the additional reasons set forth below, this Court should deny HUD's Motion to Dismiss.

## BACKGROUND

When Rocket Mortgage underwrites a mortgage loan, it generally hires an independent, third-party appraiser to "obtain an appraisal of the property," so that Rocket Mortgage can ensure that "the value of the property is sufficient to secure the loan." Compl. ¶ 5.  Federal law "requires that such appraisals must be based only on 'the independent judgment of the appraiser.'"  *Id.* (quoting 15 U.S.C. § 1639e(b)(1)).

Rocket Mortgage is challenging a HUD policy that conflicts with the appraisal independence mandated by federal law—specifically, a policy that requires lenders to "correct" or "remediate" an appraisal that is the result of perceived or alleged appraiser bias or discrimination.  Compl. ¶ 56; *see also* Compl. ¶ 40 ("HUD has a policy of holding lenders responsible for appraiser bias or discrimination when lenders fail to 'remediat[e] deficiencies'" relating to perceived appraiser bias or discrimination."); Compl. ¶ 44 (alleging that HUD requires a lender to "remediate" an appraisal where it has "an 'indicat[ion of] a potential violation of fair housing laws'").  The policy was born out of an interagency initiative pursued by the last administration, purporting "to eliminate bias and advance equity in home appraisals."  Compl. ¶¶ 32-33, 35.

HUD has confirmed the policy's existence and its requirements on several occasions.  For example, in 2024, it modified its Single Family Housing Policy Handbook for loans backed by the Federal Housing Administration to require lenders to "'revis[e] material deficiencies'" in appraisals, which included "potential violation[s] of fair housing laws or professional standards related to nondiscrimination."  Compl. ¶ 35.  Through Fannie Mae and Freddie Mac, which are responsible "for the vast majority of mortgage loans for

single-family homes originated in the United States," Compl. ¶ 39, HUD also mandated that lenders create a "framework to review and respond to" "opinion[s] of value … reflect[ing] prohibited discriminatory practices" (Fannie Mae) and a "review and resolution procedure for … 'when the Borrower(s) believes the appraiser's report or the appraiser's opinion of value … may be deficient'" because it "'reflects discriminatory practices'" (Freddie Mac). Compl. ¶ 38.

Through its policy, HUD has "altered mortgage lenders' obligations under the FHA." Compl. ¶ 41. And it has enforced that policy by having the federal government sue Rocket Mortgage for an alleged violation of the FHA, based on its failure to "correct" an allegedly discriminatory appraisal rendered by an independent, third-party appraiser. Compl. ¶ 43; Third-Party Appraiser Action Compl. ¶ 149. Beyond the Third-Party Appraiser Action, HUD has also announced its intent to hold "mortgage providers … accountable" through cases like the Third-Party Appraiser Action. Compl. ¶ 47.

Rocket Mortgage brought two claims challenging HUD's policy. Among other things, Count I seeks a declaratory judgment that TILA "precludes any requirement to 'instruct' or 'induce' an appraiser to address or correct a valuation for issues implicating the FHA," Compl. ¶ 62, as the policy requires, Compl. ¶ 64, and that, due to TILA's appraisal independence requirements, "Rocket Mortgage does not have 'control [over] or any other legal responsibility' for an independent appraiser" under the FHA and its implementing regulations, Compl. 25, Prayer for Relief (b). Count II alleges that HUD's issuance of the policy without notice and comment violated 5 U.S.C. § 553(b). Compl. ¶ 73.

## STANDARD OF LAW

"At the motion to dismiss stage, this court 'must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" *Utah v. Babbitt*, 137 F.3d 1193, 1204 (10th Cir. 1998) (citation omitted).  A complaint survives dismissal under Rule 12(b)(6) so long as it contains sufficient factual allegations that, if true, "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  And a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

### I.  There is no basis for dismissing Count I.

HUD asks this Court to dismiss Count I on three principal grounds:  (1) because there is purportedly no final agency action alleged, 5 U.S.C. § 702 does not waive HUD's sovereign immunity; (2) Count I is purportedly not prudentially ripe for this Court's consideration; and (3) this Court should decline to exercise its discretion to consider Count I, as the Third-Party Appraiser Action is purportedly a better vehicle for addressing the issues presented.  All of these arguments rest on the same baseless assumptions, including that: (1) the challenged policy is purely one of enforcement (and does not impose substantive obligations on lenders like Rocket Mortgage), (2) declaratory relief will be limited to the Third-Party Appraiser Action, and (3) the government's theory in the Third-Party Appraiser Action is the same "correction" theory of liability at issue in Count I.  As none of these assumptions is correct, HUD's arguments for dismissal of Count I do not hold water.

**A.    Sovereign immunity does not bar Count I.**

As HUD acknowledges (at 9-10), Section 702 of the Administrative Procedure Act
(APA) waives the government's sovereign immunity "in most suits for nonmonetary relief."
*Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1233 (10th Cir. 2005), *abrogated on
other grounds by Jones v. Bock*, 549 U.S. 199, 216 (2007).  That section provides:

> An action in a court of the United States seeking relief other than money
> damages and stating a claim that an agency or an officer or employee
> thereof acted or failed to act in an official capacity or under color of legal
> authority shall not be dismissed nor relief therein be denied on the ground
> that it is against the United States or that the United States is an indispen-
> sable party.

5 U.S.C. § 702.  Notably, "[t]his waiver is not limited to suits under the Administrative
Procedure Act."  *Simmat*, 413 F.3d at 1233; *Chamber of Com. v. Reich*, 74 F.3d 1322,
1328 (D.C. Cir. 1996) ("The APA's waiver of sovereign immunity applies to any suit
whether under the APA or not.").  Where "judicial review is sought pursuant to a statutory
or non-statutory cause of action that arises completely apart from the general provisions
of the APA," "[t]here is no requirement of 'finality' for this type of waiver to apply.  *Ala.-
Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 489 (5th Cir. 2014).  Instead, "there
only needs to be 'agency action' as set forth by 5 U.S.C. § 551(13)."  *Id.*

HUD contends that this Court lacks jurisdiction to consider Count I because there
is no final agency action alleged in the Complaint.  MTD 9-10.  At the outset, this Court's
subject-matter jurisdiction does not depend on the existence of "final agency action."
"[T]he requirement of a final agency action is *not* jurisdictional," even where "judicial re-
view is sought under the APA rather than a particular statute prescribing judicial review."
*Trudeau v. FTC*, 456 F.3d 178, 184 (D.C. Cir. 2006).  The existence of a final agency

action is relevant to "whether [the plaintiff] has a valid cause of action" under the APA, not jurisdiction; it is ultimately "[t]he general federal-question statute" that confers jurisdiction where an APA claim has been alleged.  *Id.*; *see also Slater Park Land & Livestock, LLC v. U.S. Army Corps. of Engineers*, 423 F. Supp. 3d 1076, 1078-80 (D. Colo. 2019) ("[T]he presence of final agency action is not a jurisdictional issue.  This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, whereas the APA's requirements are a part of Plaintiff's cause of action.").

As for HUD's waiver of sovereign immunity, HUD never explains why Section 702 of the APA requires <u>final</u> agency action to waive HUD's sovereign immunity here.  It appears that HUD's assertion flows from its mistaken belief that Rocket Mortgage "seeks review … under the APA alone."  MTD 10 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990)).  That belief is wrong and unsupported by the Complaint.  Count I does not mention the APA at all, and it does not resort to "the general provisions of the APA" to assert a claim.  *See Ala.-Coushatta Tribe*, 757 F.3d at 489.  Rather, Count I ultimately arises from the FHA, the Declaratory Judgment Act, and the fact that Rocket Mortgage can be (and has been) "sue[d] … for an action [HUD (the defendant)] is responsible for (within the scope of the proposed cause of action)":  namely, for violations of the FHA based on failures to correct purportedly discriminatory independent appraisals.[1]  *See*

---

[1] HUD may bring either an administrative enforcement action in its own right, 42 U.S.C. § 3612(b), or, on election of a complainant, authorize a civil action in district court, brought by the Department of Justice, 42 U.S.C. § 3612(o).  HUD is ultimately responsible for triggering a civil action to enforce the FHA, as the statute states "the Secretary shall authorize … a civil action," which "the Attorney General <u>shall commence and maintain</u>."  42 U.S.C. § 3612(o) (emphasis added).

*Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 932 (5th Cir. 2023) ("But so long as the defendant in a declaratory judgment suit can sue the plaintiff for an action the defendant is responsible for (within the scope of the proposed cause of action), the independent cause of action required for a declaratory judgment claim exists.").

Regardless of whether Section 702's waiver of sovereign immunity requires a showing of an agency action or a final agency action here, Rocket Mortgage has met its burden.  As explained below, the Complaint plausibly alleges that (1) HUD's policy is an agency action within the meaning of 5 U.S.C. § 551(13) that has caused legal wrong to Rocket Mortgage; and (2) the policy is a "final agency action" under 5 U.S.C. § 704.

i.    **Section 702 of the APA waives HUD's sovereign immunity because HUD's policy is an agency action that has caused Rocket Mortgage to suffer legal wrong.**

To establish waiver under Section 702 for a cause of action that "arises completely apart from the general provisions of the APA," a plaintiff must (1) "identify some 'agency action' affecting him in a specific way, which is the basis of his entitlement for judicial review," and (2) "show that he has 'suffered legal wrong because of the challenged agency action, or is adversely affected or aggrieved by that action within the meaning of a relevant statute.'"  *Ala.-Coushatta Tribe*, 757 F.3d at 489 (quoting *Lujan*, 497 U.S. at 883).  The allegations in the Complaint satisfy both requirements.

HUD's policy of "holding lenders responsible for appraiser bias or discrimination" by requiring lenders to "'remediat[e] deficiencies' relating to perceived appraiser bias or discrimination" is an "agency action" within the meaning of 5 U.S.C. § 551(13).  *See* Compl. ¶ 40.  Among other things, that policy requires a lender to supervise "an

independent, third-party appraiser" and "'correct' an appraisal"—*i.e.*, change the appraiser's estimate of the value of a property to one selected by the lender and untethered to the appraiser's independent judgment—"to remedy perceived bias or discrimination." Compl. ¶ 52.  Even if this policy were not formally called a "rule," that does not matter—it effectively functions as a rule, *see* pp. 29-30, *infra*, as it imposes obligations "that have not been established by federal law" and expects compliance with those obligations.  *See Bear Creek Bible Church v. EEOC*, 571 F. Supp. 3d 571, 599 (N.D. Tex. 2021), *rev'd & remanded on other grounds by Braidwood*, 70 F.4th at 940-41; *see also Sorenson Commc'ns, Inc. v. FCC*, 567 F.3d 1215, 1222-23 (10th Cir. 2009) ("A rule is legislative when it 'has the force of law, and creates new law or imposes new rights or duties.'") (citation omitted).[2]  Because HUD's policy functions as a rule, it is an "agency action."  5 U.S.C. § 551(13) ("'agency action'" includes "an agency rule" or its "equivalent").

Rocket Mortgage has "suffered legal wrong" because of HUD's policy:  to comply with the policy, Rocket Mortgage must violate 15 U.S.C. § 1639e's appraiser independence requirement.  *See* Compl. ¶ 56.  HUD's policy forces Rocket Mortgage "to face the impossible challenge of attempting to meet the government's conflicting theories and requirements."  Compl. ¶ 64.  And because of Rocket Mortgage's position that the policy violates TILA's appraiser independence requirements, the government has sued Rocket Mortgage on the theory that the company "had the authority to correct the discriminatory

---

[2] *Bear Creek*'s holding on Section 702's waiver of sovereign immunity was never appealed.  *See Braidwood*, 70 F.4th at 921 n.5.

appraisal, or cause it to be corrected, but failed to do so."  Third-Party Appraiser Action Compl. ¶ 149; Compl. ¶ 43.

HUD's motion to dismiss does not address any of these allegations.  Instead, it relies on an overly narrow construction of the alleged policy—one that focuses only on the fact that HUD *enforces* the policy against lenders like Rocket Mortgage.  HUD argues that Count I is not "challenging agency action," but "launching the type of 'broad program-matic attack' on HUD's enforcement program that is not within the APA's ambit of judicial review."  MTD 11.  That assertion is demonstrably false.

Count I is not some vague, nonspecific assault on HUD's enforcement priorities. It does not, for example, seek a declaration that HUD is failing to take action to achieve some "ultimate objective," *e.g.*, *Audubon of Kan., Inc. v. U.S. Dep't of Interior*, 67 F.4th 1093, 1109–10 (10th Cir. 2023), nor does it ask this Court to consider a hodgepodge of "positions allegedly taken by the government in settlement negotiations" to determine whether, based on those positions, Rocket Mortgage might be held liable for violations of a statutory scheme.  *Walmart Inc. v. U.S. Dep't of Just.*, 21 F.4th 300, 308 (5th Cir. 2021).

Rather, Rocket Mortgage is challenging HUD's policy to impose an affirmative ob-ligation on lenders "across the board" to supervise and correct the allegedly discriminatory appraisals of independent appraisers.  "[A]n agency's action in 'applying' some particular measure across the board … [could] of course [still] be challenged under the APA.'"  *Hisp. Affs. Project v. Acosta*, 901 F.3d 378, 388 (D.C. Cir. 2018) (citation omitted).  That action may be challenged so long as it is "cabined and direct," and a claim is targeted to an "identified transgression of … statutory and regulatory language, not to an exercise of

broad, unspecified discretion." *Id.* Count I fits the bill: Rocket Mortgage's challenge is "cabined and direct," limited only to HUD's policy of requiring lender "correction" of suspected discriminatory appraisals, and Rocket Mortgage has "identified [a] transgression of … statutory … language" by explaining how the policy forces lenders to violate TILA.

Moreover, HUD's policy has consequences beyond the enforcement context. With HUD's new policy comes a shift in regulatory compliance obligations: to provide just one example, mortgage lenders must now modify their reconsideration-of-value procedures to allow the lender to insert itself into the valuation process, so that the lender can correct appraisals that, in the borrower's view, "reflect[] discriminatory practices." Compl. ¶¶ 38, 41. The imposition of new compliance obligations alone makes HUD's policy a discrete, challengeable "agency action." *See Sinclair Wyo. Refin. Co., LLC v. EPA*, 72 F.4th 1137, 1144 (10th Cir. 2023) (consummation of agency decision-making "regarding … compliance obligations" was "final agency action").

### ii. HUD's policy of requiring lender correction of purportedly discriminatory valuations is a final agency action.

Even assuming that HUD can establish that Count I arises exclusively from the APA, and thus, final agency action is needed to waive HUD's sovereign immunity as to Count I, the Complaint alleges a final agency action.

"An agency action is 'final' for purposes of § 704 when the action marks the consummation of the agency's decision-making process and is one by which the rights or obligations have been determined, or from which legal consequences will flow." *Oklahoma v. U.S. Dep't of Health & Hum. Servs.*, 107 F.4th 1209, 1232-33 (10th Cir. 2024), *petition for cert. filed*, No. 24-437 (U.S. Oct. 18, 2024). The finality inquiry is a "pragmatic"

one.  *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 599 (2016).  "'[A]gency

action … need not be in writing to be final and judicially reviewable' pursuant to the APA."

*Al Otro Lado, Inc. v. McAleenan*, 394 F. Supp. 3d 1168, 1206 (S.D. Cal. 2019) (citation

omitted).  A final agency action may exist in the form of a "policy," even if the "details …

are still unclear."  *E.g.*, *Venetian Casino Resort, L.L.C. v. EEOC*, 530 F.3d 925, 929, (D.C.

Cir. 2008).  At the motion to dismiss stage, this Court is "<u>required</u> to draw all reasonable

inferences in Plaintiffs' favor," including "drawing inferences that support the existence of

an official policy."  *Amadei v. Nielsen*, 348 F. Supp. 3d 145, 165 (E.D.N.Y. 2018).

    As explained above, the relevant agency action is HUD's policy of "holding lenders

responsible" to correct "appraiser bias or discrimination."  *E.g.*, Compl. ¶ 40.  The factual

allegations demonstrate that the policy reflects the "'consummation' of the agency's deci-

sion-making  process"—there  is  nothing  "tentative"  or  "interlocutory"  about  the  policy.

*Bennett v. Spear*, 520 U.S. 154, 178 (1997).  The Complaint alleges that the policy serves

former President Biden's stated objective of "promot[ing] equity in the appraisal process"

and "ensur[ing] appraisals for [federally-]insured Mortgages are performed in a compe-

tent, independent, impartial, and objective manner."  Compl. ¶¶ 32-34.  The Complaint

also asserts that HUD has implemented the requirements of the policy by altering its

handbook for loans backed by the Federal Housing Administration, Compl. ¶ 35, and

through Fannie Mae and Freddie Mac bulletins that "impose[] lender oversight of ap-

praisal activity … for the vast majority of mortgage loans for single-family homes origi-

nated in the United States."  Compl. ¶ 39.  At the pleading stage, these allegations are

more than sufficient to support the reasonable and plausible inference that the alleged

HUD policy marks the "consummation of the agency's decision-making process."  HUD would not have taken these steps if the policy was a tentative one.

Rocket Mortgage plainly alleges the "legal obligations" flowing from HUD's policy: HUD now requires lenders to proactively "correct[]" an appraisal for "perceived appraisal bias or alleged appraisal discrimination."  Compl. ¶ 43.  That is more than just a prohibition on "[u]sing an appraisal of residential real property … where the [lender] knows or reasonably should know that the appraisal improperly takes into consideration" prohibited factors.  24 C.F.R. § 100.135(d).  HUD's policy turns a negative prohibition into an affirmative obligation to change (i.e., "correct") an appraisal value, and in doing so, imposes additional burdens on companies like Rocket Mortgage.  That is a quintessential final agency action.

Moreover, the alleged policy is also a final agency action because it is binding on HUD itself.  HUD has decided to "hold[] lenders responsible for appraiser bias or discrimination when lenders fail to 'remediat[e] deficiencies'" relating to perceived appraiser bias or discrimination."  Compl. ¶ 40.  Because HUD "intends to bind itself to a particular legal position" through the policy—specifically, a construction of the FHA that places the obligations of the Act squarely in conflict with TILA's appraiser independence requirements—the policy is a "final agency action."  *Texas v. EEOC*, 933 F.3d 433, 441-42 (5th Cir. 2019) (whether agency guidance is "'a substantive rule'—which is, by definition, a final agency action … turns on whether an agency intends to bind *itself* to a particular legal position'") (citation omitted); *Tennessee v. Dep't of Educ.*, 104 F.4th 577, 601 (6th Cir. 2024) (final agency action where "the Department binds itself to a view of Title IX and tells the States

how to avoid liability under this view, which in turn requires the States to adjust their operations and to immediately broaden the scope of their own Title IX investigations or face the consequences").

### B.    Count I is ripe.

HUD also asserts that Count I is not prudentially ripe for this Court to consider.[3] But that assertion cannot withstand scrutiny under applicable law.  Prudential ripeness turns on two factors:  "'the fitness of the issue for judicial decision'" and "'the hardship caused to the parties if review is withheld.'"  *Bellco Credit Union v. U.S.*, 2009 WL 189954 at *3 (D. Colo. Jan. 27, 2009) (citing *Park Lake Res. Ltd. Liab. Co. v. U.S. Dep't of Agric.*, 197 F.3d 448, 450 (10th Cir. 1999)).  Both factors demonstrate that Count I is ripe for judicial review now.

---

[3] Although HUD contends (at 16) that Count I "does not state a constitutional case or controversy," it does not make any constitutional ripeness arguments.  "Article III and prudential ripeness are both 'concerned with whether a case has been brought prematurely, but they protect against prematureness in different ways and for different reasons.'" *See N. Mill St., LLC v. City of Aspen*, 6 F.4th 1216, 1224-25 (10th Cir. 2021) (quoting *Simmonds v. INS*, 326 F.3d 351, 357 (2d Cir. 2003)).  Article III ripeness concerns whether "[a] threatened injury is sufficiently 'imminent' to establish standing"—HUD does not challenge Rocket Mortgage's Article III standing.  *See id.* at 1229.  The two ripeness factors challenged here—the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration—relate to prudential ripeness.  *United States v. Cabral*, 926 F.3d 687, 693-94 (10th Cir. 2019).

HUD also argues (at 21) that Count I would not "resolve an entire case or controversy," but as explained below, that is a prudential consideration for the Court to consider in deciding whether to exercise its jurisdiction over Rocket Mortgage's declaratory judgment claim.  Again, HUD does not challenge Rocket Mortgage's Article III standing (nor could it, given that Rocket Mortgage has already been injured by the Third-Party Appraisal Action).

### i.    Count I is fit for judicial decision.

"In determining the fitness of an issue for judicial review," this Court considers "whether the issue 'is purely legal, whether consideration of the issue would benefit from a more concrete setting, and whether the agency's action is sufficiently final.'"  *Clean Air Implementation Project v. EPA*, 150 F.3d 1200, 1204 (D.C. Cir. 1998) (citation omitted); *see also Cabral*, 926 F.3d at 693 ("As for whether the issue is fit for judicial review, we focus on whether the determination of the merits turns upon strictly legal issues or requires facts that may not yet be fully developed.") (citation omitted).  As explained above, HUD's policy is more than "sufficiently final."  Thus, so long as the issues presented in Count I are "purely legal" and would not "benefit from a more concrete setting," Count I is prudentially ripe for review.

Count I presents at least three "purely legal" issues:

1. If a mortgage lender "corrects" a valuation by an independent third-party appraiser to address perceived bias or alleged discrimination by the appraiser, does that constitute an "instruct[ion]" or "induce[ment]" that violates TILA's appraiser independence requirements, 15 U.S.C. § 1639e?

2. Section 1639e(c)(3) allows a mortgage lender to "ask[] an appraiser to" "[c]orrect errors in the appraisal report."  Is perceived bias or alleged discrimination an "error" for purposes of 15 U.S.C. § 1639e(c)(3)?  *See* Compl. ¶ 52.  If not, does the "correction" of an appraisal report to address perceived bias or alleged discrimination otherwise fall within the exceptions provided by 15 U.S.C. § 1639e(c)?

3. If TILA does not permit a mortgage lender to "correct" an independent appraisal to address the appraiser's perceived bias or alleged discrimination, is the lender responsible for the allegedly discriminatory appraisal under the FHA solely for the failure to engage in "correction"?

These questions would not benefit from further factual development, as they are the sort of "predominately legal questions [that] are particularly amenable to a conclusive

determination in a preenforcement context." *Wayne Land & Min. Grp. LLC v. Del. River Basin Comm'n*, 894 F.3d 509, 523 (3d Cir. 2018) (citation omitted).  Indeed, HUD attempts to argue the merits in explaining why Count I is not fit for judicial decision, which only demonstrates that these issues can be resolved without additional facts.  *See* MTD 18 (contending that Rocket Mortgage's statutory arguments cannot be facially correct, as TILA "itself permits a lender like Rocket Mortgage to ask the appraiser to … "'[c]orrect errors in the appraisal report'").

  As part of its efforts to paint this case as a generic pre-enforcement challenge, HUD argues (at 18) "the relationship between the FHA and TILA necessarily depends on particular facts—what information the appraiser used to support his valuation, what the lender knew at the time it relied on the appraisal, and what steps (if any) the lender took to remedy problems."  But none of these facts is necessary to answer the question whether the affirmative obligation imposed by HUD's policy would cause a mortgage lender like Rocket Mortgage to violate TILA.  Obviously, whether a particular lender is liable for relying on a particular appraiser's problematic appraisal depends on the specific facts and circumstances.  But whether TILA permits the imposition of an affirmative obli-gation for a lender to *correct* that appraisal *at all*, including by substituting its judgment as to the value of a property for that of the independent judgment of a licensed, professional, third-party appraiser, is a pure question of law that does not require any factual develop-ment.  *See Braidwood*, 70 F.4th at 931 (rejecting the EEOC's ripeness challenge on the ground that "Title VII discrimination claims require a fact-specific inquiry," and the "near talismanic mantra that 'further factual development' would 'significantly advance'" the

resolution of claims).  HUD's bald assertion that "[j]udicial review of Rocket Mortgage's asserted 'pure questions of law' would … 'stand on a much surer footing in the context of an application to a specific factual framework'" is not credible when HUD fails to explain what additional facts are necessary to resolve the statutory issues presented.  *See* MTD 19-20 (citations omitted).

In this context—where Rocket Mortgage is challenging a policy of general applicability, and not seeking the adjudication of legal liability under a particular set of facts—the relevant question is whether further factual development *as to the policy* would aid this Court's consideration of the claim, not particular facts concerning the application of that policy.  As alleged, HUD has "said nothing to suggest that a procedural or substantive evolution of its … policy is pending or expected."  *Venetian Casino Resort, L.L.C. v. EEOC*, 409 F.3d 359, 365 (D.C. Cir. 2005).

Accordingly, Count I is fit for judicial review.

### ii.    Absent immediate judicial review of Count I, Rocket Mortgage will continue to suffer hardship.

The hardship prong of the ripeness doctrine is satisfied "where administrative action directly produces a harmful change in a party's business conduct."  *Merit Energy Co., LLC v. Haaland*, Nos. 21-8047, 21-8048, 2022 WL 17844513, at *7 (10th Cir. Dec. 22, 2022) (citing *Rocky Mountain Oil & Gas Ass'n v. Watt*, 696 F.2d 734, 742-43 (10th Cir. 1982)).  Despite HUD's assertions to the contrary, the Complaint demonstrates that, for Rocket Mortgage, business is anything but "usual."  The Complaint alleges that HUD's policy forces new, affirmative obligations on Rocket Mortgage to police independent appraisals and "correct" them for the appraiser's perceived bias or alleged discrimination.

Compl. ¶¶ 56, 64.  That is a substantial burden, and Rocket Mortgage would not bear that burden but for the policy.

HUD also resists a ripeness finding on the basis that Rocket Mortgage may never be sued again for violating the policy and, outside of the Third-Party Appraiser Action, may not have to raise "the TILA defense … in a materially similar posture."  MTD 19.  But HUD's theory of ripeness proves "too restrictive"—after all, "[t]he *in terrorem* effects from [HUD's policy] and a credible prosecution risk are sufficient" to demonstrate hardship and ripeness.  *Braidwood*, 70 F.4th at 931.

Finally, "[t]he hardship prong of the ripeness doctrine is largely irrelevant in cases, such as this one, in which neither the agency nor the court have a significant interest in postponing review."  *Venetian Casino*, 409 F.3d at 365-66 (citation and internal quotation marks omitted).  HUD does not contend that this Court's consideration of the legal issues presented would benefit from delaying review.  By contrast, denying Rocket Mortgage prompt judicial review of HUD's policy puts Rocket Mortgage "in danger of" another "costly enforcement action" like the Third-Party Appraiser Action.  *Braidwood*, 70 F.4th at 931.  The combination of the burdens associated with regulatory compliance, combined with the costs of defending enforcement actions like the Third-Party Appraiser Action about allegedly discriminatory appraisals that Rocket Mortgage failed to "correct," constitute sufficient hardship to make Count I ripe for judicial review.

### C.    This Court should exercise its discretion to consider Count I on the merits.

A district court's jurisdiction over a declaratory judgment claim is discretionary, and the decision whether to exercise jurisdiction is a "practical" one.  *St. Paul Fire & Marine*

*Ins. Co. v. Runyon*, 53 F.3d 1167, 1170 (10th Cir. 1995).  The Tenth Circuit has set forth

five factors for this Court to consider in deciding whether to exercise jurisdiction:

> [1] whether a declaratory action would settle the controversy;
> [2] whether it would serve a useful purpose in clarifying the legal relations at issue;
> [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to *res judicata*";
> [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and
> [5] whether there is an alternative remedy which is better or more effective.

*State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994) (citation omitted).

Ultimately, these five factors can be reduced to a single inquiry:  "whether the controversy

can better be settled in a pending action."  *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*,

793 F.3d 1177, 1190 (10th Cir. 2015) (quoting *ARW Expl. Corp. v. Aguirre*, 947 F.2d 450,

454 (10th Cir. 1991)).

All of the relevant factors (the first, second, third, and fifth) support this Court ex-

ercising its discretionary jurisdiction to consider Count I.[4]  There is no better action or

vehicle for resolving the question whether HUD's policy of requiring lenders to "correct"

independent appraisals for issues relating to perceived appraiser bias or alleged appraisal

discrimination violates TILA's appraiser independence requirement.  Although HUD tries

its hardest to persuade this Court otherwise, this case is not about the Third-Party Ap-

praiser Action—the Action is just a symptom of HUD's untenable policy.  Should Rocket

Mortgage prevail in the Action, HUD's policy would still obligate lenders to "correct" alleg-

edly discriminatory appraisals, leaving it facing a no-win compliance choice between

---

[4] No state court is exercising competing jurisdiction, so the fourth factor does not apply.

violating HUD's policy (and, according to HUD, the FHA), or violating TILA and its ap-
praiser independence requirements. As a result, *this case*, not the Third-Party Appraiser
Action, will bring Rocket Mortgage relief from the hardship and harm arising from HUD's
policy.

> **i.    A declaratory judgment would settle the controversy and clar-
> ify Rocket Mortgage's legal obligations as to whether TILA per-
> mits a lender to "correct" an independent appraisal for per-
> ceived bias or alleged discrimination by the appraiser.**

The declaratory judgment sought in Count I would resolve the conflict between
TILA's appraiser independence requirements and HUD's view that the FHA requires a
lender to bear responsibility for a biased or discriminatory independent appraisal, when it
fails to exercise its "obligation" to "correct" that appraisal. *See* Compl. ¶¶ 61-62. In par-
ticular, it would resolve whether it is lawful to require a lender to take such corrective
action, as HUD's policy requires. A judgment on Count I would "settle the controversy"
and "clarify[] the legal relations at issue"—specifically, Rocket Mortgage's regulatory com-
pliance obligations under HUD's administration of the FHA. *Liberty Mut. Pers. Ins. Co. v.
Prutsman*, No. 1:23-cv-02615, 2024 WL 3341002, at *5 (D. Colo. June 10, 2024)
("whether a declaratory action will 'settle the controversy'" and "whether 'it would serve a
useful purpose in clarifying the legal relations at issue'" are "best considered together")
(citation omitted), *report & recommendation adopted*, 2024 WL 3738937 (D. Colo. June
25, 2024).

HUD argues (at 21) that the resolution of Count I would not "resolve an entire case
or controversy," only "one legal issue—a potential defense in a future (or current) enforce-
ment suit—that would not itself decide the ultimate issue of liability under the FHA." At

the outset, the Declaratory Judgment Act requires only the resolution of "questions in controversy," not entire cases.  *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) (relevant question is "whether the <u>questions in controversy</u> between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court" (emphasis added) (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942))).  Discrete issues that would ordinarily make up only a small portion of a case are often resolved through declaratory judgment actions—that is what the Declaratory Judgment Act is for.  *E.g.*, *Travelers Cas. Ins. Co. of Am. v. A-Quality Auto Sales, Inc.*, 98 F.4th 1307, 1315-17 (10th Cir. 2024) (affirming exercise of jurisdiction over the construction of a $500,000 policy limit, and the parties' "rights and responsibility under the Policy").

And Count I is about more than just "a single defense to be employed in enforcement actions of the FHA present and future."  MTD 24.  Rather, Count I is about Rocket Mortgage's substantive obligations under the FHA, and the limits of those obligations in light of TILA's appraiser independence requirements—a classic reason to bring a declaratory judgment claim.  *See, e.g.*, *Owners Ins. Co. v. Keeton*, No. 1:20-cv-02950, 2021 WL 5998526, at *5 (D. Colo. Dec. 20, 2021) (a dispute "deals squarely with legal relations" where "the Court's adjudication will necessarily clarify the obligations owed by Plaintiff").

Set aside for a moment the fact that HUD's policy imposes regulatory compliance obligations independent of an enforcement action.  Even if the correct inquiry is whether Count I would "settle the controversy" presented in the Third-Party Appraiser Action or some other future enforcement action, the answer would be yes.  The issues presented

are not "collateral legal issue[s]" for a court to decide after first addressing the merits of

an FHA claim, which may or may not have any "coercive impact on the legal rights or

obligations of either party," *Calderon v. Ashmus*, 523 U.S. 740, 746-47, 749 (1998), such

as an affirmative defense that a court may never address.  *E.g.*, *Coffman v. Breeze

Corps.*, 323 U.S. 316, 322 (1945) (declining to consider whether the Royalty Adjustment

Act provides a defense to a payment obligation, as "its adjudication would depend [on]

appellant's right of recovery"); *Morgan Drexen, Inc. v. CFPB*, 979 F. Supp. 2d 104, 117

(D.D.C. 2013) (challenge to the constitutionality of the CFPB would not "finally settle the

controversy between the parties" as to enforcement action brought by CFPB) (citation

omitted), *aff'd*, 785 F.3d 684 (D.C. Cir. 2015).  Rather, Count I addresses whether the

government may pursue an FHA claim against a lender at all based on the lender's al-

leged failure to correct an independent, licensed third-party appraiser's allegedly biased

or discriminatory independent appraisal.  That Count I does not dispose of every possible

theory on which the government relies in the Third-Party Appraiser Action does not give

this Court any reason to decline jurisdiction.  MTD 25.  *See* Wright & Miller, Federal Prac-

tice & Procedure § 2759 ("A declaratory action need not be dismissed because it could

not settle all possible differences between the parties …."); *see also State Farm Mut.

Auto. Ins. Co. v. Mid-Continent Cas. Co.*, 518 F.2d 292, 296-97 (10th Cir. 1975) (district

court did not improperly grant declaratory judgment despite the fact that "subsequent

events may create new controversies").  Count I "serves a useful purpose" by "dispos[ing]

of a controversy" that lies at the heart of cases like the Third-Party Appraiser Action, *see

also State Farm*, 518 F.2d at 296—cases that turn on the allegation that Rocket Mortgage

"had the authority to correct the discriminatory appraisal, or cause it to be corrected, but failed to do so."  Third-Party Appraiser Action Compl. ¶ 149;.

Critically, HUD does not contend that the issues presented in Count I would not be dispositive of an enforcement claim based on a lender's alleged failure to correct a discriminatory appraisal, either in the Third-Party Appraiser Action or in some future action. Rather, HUD resorts to arguing the merits (at 25):  that "the FHA and TILA can be read in harmony."  But this Court should not determine its discretionary jurisdiction *by deciding the merits*.  *Cf. Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n*, 685 F.3d 977, 983 (10th Cir. 2012) (district court "did not act unreasonably … in weighing the first two *Mhoon* factors without assuming [the plaintiff] would prevail on the merits"); *Morgan Drexen*, 979 F. Supp. 2d at 117 (in determining whether declaratory judgment would "finally settle the controversy between the parties," noting that "[t]he Court cannot assume … it will resolve the merits of [Plaintiffs'] complaint in [their] favor" (citation omitted)).

In any event, HUD's reading of TILA is an untenable one.  HUD's argument turns entirely on the assumption that an appraiser's perceived bias or alleged discrimination is an "error" for purposes of 15 U.S.C. § 1639e(c).  But "correcting errors" means fixing factual or clerical mistakes, not investigating and rooting out perceived bias and alleged discrimination and coming up with a different appraisal value devoid of that alleged bias or discrimination.  *E.g.*, *Edwards v. Tenn. Valley Fed. Credit Union*, No. 1:23-cv-233, 2024 WL 2981180, at *4 (E.D. Tenn. June 13, 2024) (date correction fell "squarely within TILA's error-correction exception").  While HUD suggests that a harmonious reading of the two statutes compels reading "error" as including "perceived appraiser bias and alleged

appraisal discrimination," a harmonious reading cannot rely on a reading of the word "error" that radically departs from the plain meaning of the word. *Error*, Black's Law Dictionary (12th ed. 2024) ("A mistake of law or of fact in a tribunal's judgment, opinion, or order."); *Error*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/error ("[S]omething produced by mistake."); *see also M.S. v. Premera Blue Cross*, 118 F.4th 1248, 1266 (10th Cir. 2024) ("If the language is plain and unambiguous, 'our inquiry must cease and the plain meaning of the statute controls.'") (citation omitted). Both here and in the Third-Party Appraiser Action, the government has offered no explanation of why the word "error," as used in § 1639e(c)(3), embraces alleged appraiser bias or discrimination.

> ii. **Rocket Mortgage does not seek a declaratory judgment for improper procedural purposes, and there is no better alternative remedy.**

Rocket Mortgage is not using Count I "merely for the purpose of 'procedural fencing' or 'to provide an arena for a race to *res judicata*.'" *Mhoon*, 31 F.3d at 983 (citation omitted). HUD's principal argument for "procedural fencing" is that Rocket Mortgage is angling for faster Tenth Circuit review of the issues presented by Count I, and that an appellate decision favoring Rocket Mortgage would "bind the court in [the Third-Party Appraiser Action]." MTD 26. But that argument rests on a series of speculative assumptions: that this Court would issue an appealable decision on the merits sooner than the court in the Third-Party Appraiser Action, that the court deciding the Action would not certify an order for interlocutory appeal, *see* 28 U.S.C. § 1292(b), or that the Tenth Circuit would rule in Rocket Mortgage's favor. Tellingly, HUD cites no authority for the proposition

that the possibility of faster, favorable appellate review is the sort of "procedural fencing" that the Tenth Circuit has cautioned against.  This Court should not refuse to consider Count I simply because of this unfounded speculation.  *Cf. N.H. Ins. Co. v. TSG Ski & Golf, LLC*, No. 21-cv-01873, 2022 WL 1184547, at \*4 (D. Colo. Apr. 21, 2022) (fear of procedural maneuvering in the Colorado state courts was "speculative at best").

HUD's procedural fencing argument becomes even more incredible when considering that the court in the Third-Party Appraiser Action may never reach the issues presented in Count I.  To start, Count I is about HUD's policy, not about HUD's decision to seek to hold an individual lender liable in an individual instance for failing to undertake "correction" that TILA forbids.  The court deciding the Action is not in a position to opine on HUD's policy, and, even if it agreed with Rocket Mortgage on the merits, there is no guarantee that HUD will stop applying and enforcing its policy.

And given the way that HUD has litigated the Third-Party Appraiser Action, the court there may never opine on the tension between HUD's reading of the FHA and TILA's appraiser independence requirements.  In the Action, the government based its theory of FHA liability in its complaint on the notion that Rocket Mortgage "had the authority to correct the discriminatory appraisal, or cause it to be corrected, but failed to do so."  Third-Party Appraiser Action Compl. ¶ 149.  When Rocket Mortgage moved to dismiss the complaint on the ground that TILA forbade it from engaging in such "correction," the government pivoted in its motion to dismiss opposition, asserting a new theory of liability that the FHA forbids lenders from "using an appraisal … where the [lender] knows or reasonably should know that the appraisal" is discriminatory.  Pl. U.S.' Resp. to Def. Rocket Mortg.,

LLC's Mot. to Dismiss the Compl. 1-2, 6, *United States v. Rocket Mort. LLC*, No. 1:24-cv-02915 (D. Colo. filed Jan. 9, 2025), ECF No. 50.  While the government continues to defend its reading of TILA and the FHA-, *see* p. 25, *supra* (noting the government's failure to explain why "error" encompasses perceived appraiser bias or alleged appraisal discrimination), the government has attempted to move away from the correction issue in the Third-Party Appraiser Action in an effort to save that case.  Given this, Count I is the only surefire way of obtaining clarity on the relationship between TILA and the FHA.

HUD also invokes the first-to-file rule as another procedural reason for withholding review of Count I.  But the first-to-file rule has no relevance in a pure declaratory judgment context:  "well-settled law [permits] a declaratory judgment action brought before resolution of an underlying case."[5]  *Allstate Ins. Co. v. River Cliff Realty, LLC*, No. 1:22-cv-01545, 2023 WL 3321366, at *9 (D. Colo. May 9, 2023) (citation omitted).  Moreover, the purpose of the first-to-file rule is to prevent forum manipulation that allows "defendants, not plaintiffs, to select the forum for the plaintiff's claim."  *Wakaya Perfection*, 910 F.3d at 1126.  Rocket Mortgage cannot be accused of forum manipulation by bringing suit in the *same court* in which the government filed its case against Rocket Mortgage.

---

[5] Neither of the cases on this point in HUD's motion to dismiss involved *just* a declaratory judgment claim; both had other causes of action properly subjected to the first-to-file rule. *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 679 F. Supp. 2d 1287 (D. Kan. 2010), was a putative class action filed in Kansas after a similar class action had been filed in Oklahoma.  In *Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*, 910 F.3d 1118 (10th Cir. 2018), the later-filed declaratory judgment claim was one of 11 claims; most of the plaintiff's claims were breach-of-contract and tortious interference claims.  *See Wayaka Perfection, LLC v. Youngevity Int'l, Inc.*, No. 16-cv-315, 2017 WL 5159737, at *3 (D. Utah Nov. 7, 2017), *rev'd & remanded by Wakaya Perfection*, 910 F.3d at 1118.

And even if it were appropriate to consider the first-to-file rule here, there would be no reason to apply it. The rule applies only if there is "similarity of the issues … at stake." *Id.* at 1124 (citation omitted). As explained above, the government's response to Rocket Mortgage's argument in the Third-Party Appraiser Action that TILA does not allow a lender to "correct" an appraisal was to simply pivot away from the issue, focusing instead on whether Rocket Mortgage wrongly relied on an appraisal it knew or should have known was discriminatory.[6] The "primary issue" of the Action is not the same as the "primary issue" here. *See Cochran v. Hewlett-Packard Co.*, No. 20-cv-01235, 2021 WL 826007, at *3 (D. Colo. Mar. 4, 2021) (finding similarity of issues where "the primary issue on all the claims is the same and hinges on the same factual question"). Thus, the first-to-file rule should not apply.

## II. Count II plausibly alleges that HUD failed to engage in required notice-and-comment rulemaking.

Count II alleges that HUD enacted a policy with "the force and effect of law" that "imposes on" mortgage lenders the "legal responsibility to supervise and correct the actions of appraisers." Compl. ¶ 75. Elsewhere in the Complaint, Rocket Mortgage explains how HUD's policy "require[s] the lender to 'correct' an appraisal to remedy perceived bias or discrimination." Compl. ¶ 52; Compl. ¶ 56 ("HUD expects lenders to 'correct' or 'remediate' perceived or alleged appraiser bias or discrimination, even if such 'correction' or 'remediation' would breach appraiser independence, in violation of a host of federal

---

[6] That theory is deficient in its own right for many reasons, but it is not relevant here other than to illustrate the government's recent attempted pivot away from its original predicate "correction" theory in the Third-Party Appraiser Action.

statutes or regulations preserving such independence.").  Because Rocket Mortgage has alleged that HUD, through its policy, issued a "binding rule of substantive law" without notice and comment, it has plausibly alleged a violation of 5 U.S.C. § 553(b).  *Guardian Fed. Sav. & Loan Ass'n v. Fed. Sav. & Loan Ins. Corp.*, 589 F.2d 658, 667 (D.C. Cir. 1978).

HUD seeks to dismiss Count II on three grounds, none of them viable.

First, HUD makes the irrelevant contention that policies are not "rules" and thus not subject to the APA's notice-and-comment arguments.  HUD then double-dips on this contention, asserting that, because the alleged policy is not labeled a rule, there is no final agency action (at 12-13), and also, no plausibly alleged Section 553(b) claim (at 28), as "those procedures are only required for substantive rules."  But as the Supreme Court has made clear, labels do not matter—content does.  *Azar v. Allina Health Servs.*, 587 U.S. 566, 575 (2019) ("statutory notice-and-comment demands" turn on "the *contents* of the agency's action, not the agency's self-serving *label*").  And Rocket Mortgage alleged that the content of HUD's policy amounts to "a binding rule of substantive law."  *See* pp. 14-15, *supra*.

Second, HUD appears to argue (at 14) that there is no final agency action alleged in Count II because the content of the policy concerns the filing of enforcement actions.  That is wrong.  As explained above, pp. 13-15, *supra*, HUD's argument entirely ignores the allegations demonstrating that HUD implemented a requirement for lenders to "correct" appraisals by appraisers who are suspected of bias or alleged to be discriminating against minority borrowers—*i.e.*, substantive obligations.

Finally, HUD contends (at 13) that Rocket Mortgage is challenging 24 C.F.R. § 100.135(d), which states that "where a lender 'us[es] an appraisal of residential real property … where the [lender] knows or reasonably should know that the appraisal improperly takes into consideration race,'" the lender may be in violation of the FHA. Again, that is the government's newfound theory in the Third-Party Appraiser Action—it is not what Rocket Mortgage is challenging here. *See* pp. 14, 21, *supra*. Rocket Mortgage has plausibly alleged that HUD's policy of requiring "correction" of allegedly biased or discriminatory appraisals was born out of former President Biden's "objective of 'promot[ing] equity in the appraisal process,'" and implemented through Fannie Mae, Freddie Mac, and changes to HUD's handbook for mortgage loans backed by the Federal Housing Administration. Compl. ¶¶ 34, 38-40. HUD's decision to enact the policy without notice and comment is what is at issue in Count II.

For these reasons, this Court should deny HUD's motion to dismiss Count II.

## CONCLUSION

This Court should deny HUD's motion to dismiss.

Respectfully submitted this 8th day of April, 2025, by Plaintiff Rocket Mortgage

LLC, through its attorneys,

Jeffrey B. Morganroth
Morganroth & Morganroth
344 N. Old Woodward Ave., Ste. 200
Birmingham, Mich. 48009
(248) 864-4000
jmorganroth@morganrothlaw.com

/s/ Brooks R. Brown
Brooks R. Brown
Goodwin Procter LLP
100 Northern Ave.
Boston, Mass. 02210
(617) 570-1000
bbrown@goodwinlaw.com

Andrew Kim
Keith Levenberg
Angelica Rankins
Goodwin Procter LLP
1900 N. St., N.W.
Washington, D.C. 20036
(202) 346-4000
andrewkim@goodwinlaw.com
klevenberg@goodwinlaw.com
arankins@goodwinlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 8th day of April, 2025, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system which will send notification of such

filing to all counsel of record.

/s/ *Brooks R. Brown*
Brooks R. Brown