# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-03368-CNS

ROCKET MORTGAGE, LLC,

    Plaintiff,

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,

    Defendant.

---

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT (ECF Nos. 1 & 18)**

---

**TABLE OF CONTENTS**

**INTRODUCTION** .................................................................................................................. 1

**ARGUMENT** ........................................................................................................................... 1

I.     HUD Did Not Promulgate a New Rule or Policy ....................................................... 1

II.    The Court Lacks Subject-Matter Jurisdiction over Counts I & II ............................ 6

        a.     HUD is immune from Counts I & II. .................................................... 6

        b.     Count I does not state a constitutional case or controversy. ............ 9

III.   Counts I & II Otherwise Merit Dismissal ................................................................ 11

        a.     The Court should decline to exercise jurisdiction over Count I. ................................................................................................................. 11

        b.     Count II fails to state a claim. ......................................................... 12

**CONCLUSION** .................................................................................................................... 13

## TABLE OF AUTHORITIES

**CASES**

*Al Otro Lado, Inc. v. McAleenan*,
  394 F. Supp. 3d 1168 (S.D. Cal. 2019) ........................................................................ 8

*Azar v. Allina Health Servs.*,
  587 U.S. 566 (2019) ................................................................................................. 13

*Bear Creek Bible Church v. EEOC*,
  571 F. Supp. 3d 571 (N.D. Tex. 2021) ........................................................................ 7

*Brown v. City of Tulsa*,
  124 F.4th 1251 (10th Cir. 2025) .................................................................................. 6

*Carney v. Adams*,
  592 U.S. 53 (2020) ................................................................................................... 12

*Calderon v. Ashmus*,
  523 U.S. 740 (1998) ................................................................................................... 9

*Connolly v. Lanham*,
  685 F. Supp. 3d 312 (D. Md. 2023) ............................................................................ 3

*Hisp. Affs. Project v. Acosta*,
  901 F.3d 378 (D.C. Cir. 2018) .................................................................................... 8

*Perez v. Mortg. Bankers Ass'n*,
  575 U.S. 92 (2015) ..................................................................................................... 4

*Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*,
  793 F.3d 1177 (10th Cir. 2015) ................................................................................ 11

*Sinclair Wyo. Refining Co. v. U.S. EPA*,
  72 F.4th 1137 (10th Cir. 2023) ................................................................................... 7

*Slater Park Land & Livestock, LLC v. U.S. Army Corps of Eng'rs*,
  423 F. Supp. 3d 1076 (D. Colo. 2019) ........................................................................ 7

*State Farm Fire & Cas. Co. v. Mhoon*,
  31 F.3d 979 (10th Cir. 1994) .................................................................................... 11

*Tennessee v. Dep't of Educ.*,
  104 F.4th 577 (6th Cir. 2024) ..................................................................................... 7

*Texas v. EEOC*,
  933 F.3d 433 (5th Cir. 2019) .................................................................................... 7

*Travelers Cas. Ins. Co. of Am. v. A-Quality Auto Sales, Inc.*,
  98 F.4th 1307 (10th Cir. 2024) ............................................................................ 9, 10

*Trudeau v. FTC*,
  456 F.3d 178 (D.C. Cir. 2006) ................................................................................. 7

*United States v. Sherwood*,
  312 U.S. 584 (1941) ................................................................................................ 7

*United States v. Testan*,
  424 U.S. 392 (1976) ................................................................................................ 7

*Venetian Casino Resort, LLC v. EEOC*,
  409 F.3d 359 (D.C. Cir. 2005) ............................................................................... 10

*Wildearth Guardians v. Pub. Serv. Co. of Colo.*,
  698 F. Supp. 2d 1259 (D. Colo. 2010) ..................................................................... 6

**STATUTES**

5 U.S.C. § 702 ................................................................................................................ 6

15 U.S.C. § 1639e .......................................................................................................... 3

42 U.S.C. § 3605 ........................................................................................................ 2, 3

**RULES**

Fed. R. Civ. P. 12 ......................................................................................................... 13

**REGULATIONS**

24 C.F.R. § 100.135 .................................................................................................. 2, 3

**OTHER AUTHORITIES**

Federal Housing Finance Agency, *About Fannie Mae and Freddie Mac* .......................... 6

Federal Housing Finance Agency, *Conservatorship* ....................................................... 6

*Implementation of the Fair Housing Amendments Act of 1988*,
  54 Fed. Reg. 3232 (Jan. 23, 1989) ........................................................................... 2

Mortgagee Letter 2025-08 .............................................................................................. 5

## INTRODUCTION

The same day Rocket Mortgage moved to dismiss the government's lawsuit enforcing the Fair Housing Act ("FHA"), it filed this suit. The motion to dismiss the Enforcement Suit and the complaint here both explain Rocket Mortgage's view that one statutory provision (in the Truth in Lending Act, or "TILA") prevents it from "correcting" or "remediating" discriminatory appraisals, reliance on which may trigger FHA liability. Despite those similarities, Rocket Mortgage insists that this case is not about the Enforcement Suit, but instead concerns an unwritten HUD "policy" purportedly requiring such correction or remediation. Tellingly, Rocket Mortgage is unable to explain what "correction" or "remediation" looks like. That may be so because there is, in fact, no "policy" of the sort Rocket Mortgage supposes. In reality, the FHA and related regulations forbid lenders from discriminating because of race in making mortgage decisions, including by relying on discriminatory appraisals. The limited evidence Rocket Mortgage has proffered does not establish that HUD has added to those requirements in the way the lender says. The non-existence of any agency "policy" dooms Rocket Mortgage's two claims to relief. In any event, the sheer abstraction of the questions to which Rocket Mortgage seeks answers (in Count I) are not susceptible to judicial relief. The Court should dismiss the case.

## ARGUMENT

### I.   HUD Did Not Promulgate a New Rule or Policy

Rocket Mortgage's filings repeatedly refer to a HUD "policy," or legislative rule—"specifically, a policy that requires lenders to 'correct' or 'remediate' an appraisal that is the result of perceived or alleged appraiser bias or discrimination," Pl.'s Opp'n to MTD at

1

4, ECF No. 25 ("Pl.'s Br.") (quoting Compl. ¶ 56, ECF No. 1).  *See generally* Compl.; Pl.'s Br.  Rocket Mortgage's invocation of that "policy" is more than a rhetorical flourish; it is an essential element of both counts in the complaint.  In Rocket Mortgage's telling, the "policy" constitutes final agency action abrogating federal sovereign immunity, Pl.'s Br. at 7-15, presents a ripe (and thus constitutional) case or controversy, *id.* at 16-19, demands declaratory relief now, *id.* at 21-28, and required, but did not undergo, notice-and-comment rulemaking, *id.* at 28-30.  Without the existence of this "policy," in other words, Rocket Mortgage's case cannot proceed.

Fatally for Rocket Mortgage, however, there is no policy that imposes obligations on mortgage lenders beyond what federal statutory and regulatory law already require.  Start with the undisputed legal background.  The FHA prohibits lenders from "discriminat[ing] against any person in making available [a residential real estate-related transaction], or in the terms or conditions of such a transaction, because of race[.]"  MTD at 3, ECF No. 18 (quoting 42 U.S.C. § 3605(a)); *see also* 42 U.S.C. § 3605(b)(2) (defining "residential real estate-related transactions" to include "appraising of residential real property").  In an implementing regulation issued more than thirty-five years ago, HUD explained that "[u]sing an appraisal . . . in connection with the sale, rental, or financing of any dwelling where the person knows or reasonably should know that the appraisal improperly takes into consideration race" constitutes discrimination in violation of § 3605(a).  *Implementation of the Fair Housing Amendments Act of 1988*, 54 Fed. Reg. 3232, 3242 (Jan. 23, 1989), *codified as amended at* 24 C.F.R. § 100.135(d)(1).  Read together, 42 U.S.C. § 3605(a) and 24 C.F.R. § 100.135(d)(1) prohibit a mortgage lender from relying

on a discriminatory appraisal.  MTD at 3-4 (citing, *e.g.*, *Connolly v. Lanham*, 685 F. Supp. 3d 312, 325 (D. Md. 2023)).  And it is precisely that conduct for which the government has sought to hold Rocket Mortgage accountable in the Enforcement Suit.  *Id.* at 5-6.

Must a lender "'correct' or 'remediate' an appraisal that is the result of perceived or alleged appraiser bias or discrimination," as Rocket Mortgage claims?  *See* Pl.'s Br. at 4.  To the extent "correct" or "remediate" means taking steps *not* to rely on a discriminatory appraisal, perhaps.  Those steps could include asking the appraiser for additional information, or obtaining a second appraisal.  (Indeed, the statute Rocket Mortgage raises as a defense in the Enforcement Suit and here, TILA, expressly contemplates such remedial measures.  *See id.* § 1639e(c)(1)-(3).)  At bottom, the lender must not discriminate because of protected categories, including race, in making lending decisions, including by relying on discriminatory appraisals.  42 U.S.C. § 3605(a); 24 U.S.C. § 100.135(d)(1).  How a lender complies is a matter left to its discretion.  And crucially, this obligation stems not from a HUD "policy," but from the straightforward meaning of federal law.

Rocket Mortgage nevertheless insists that HUD has surreptitiously promulgated a rule that requires lenders to do something more.  Precisely *what* Rocket Mortgage's purported "policy" requires—at least beyond already existing requirements, *see supra*—is lamentably underdeveloped in its complaint and opposition brief.  But Rocket Mortgage insinuates (without stating directly) that HUD's new "policy" requires lenders to override appraisers' valuations when confronted with discriminatory appraisals.  Compl. ¶ 52 (referring to a policy of required "supervision" of an appraiser); Pl.'s Br. at 9-10 (citing Compl. ¶ 52); *id.* at 11 (similar); *id.* at 12 ("mortgage lenders must now modify their

3

reconsideration-of-value procedures to allow the lender[s] to insert [themselves] into the valuation process"); *id.* at 17 (characterizing the "policy" as requiring a lender to "substitut[e] its judgment as to the value of a property for that of the independent judgment of a[n] . . . appraiser").  Rocket Mortgage's position appears to be that HUD now requires lenders to micromanage the daily operations of appraisers and to dictate property valuations.

The "numerous factual allegations in the complaint" that Rocket Mortgage faults HUD for overlooking, Pl.'s Br. at 2, come nowhere close to establishing that such a rule ever existed, or that it exists now.  Rocket Mortgage first cites the purported "interagency view that the Fair Housing Act and the Equal Credit Opportunity Act should be used 'to eliminate bias and advance equity in home appraisals.'"  Compl. ¶ 33.  To the extent that sentence remains an accurate statement of interagency policy, by its terms it does not require lenders to dictate valuations or supervise appraisers.  Even if it did, as a policy statement, it would not have the force of law, *i.e.*, would not require anything more than compliance with the FHA and its 1989 implementing regulation, which Rocket Mortgage is not challenging.  *See Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015).

Rocket Mortgage turns next to Mortgagee Letter 2024-07, quoting its "additional standards for appraisal reviews," including a requirement that lenders "'revis[e] material deficiencies' in appraisals."  Compl. ¶ 35.  Again, by its terms, this requirement cannot fairly be read to obligate lenders to instruct appraisers to recommend particular valuations, as Rocket Mortgage suggests.  Rocket Mortgage goes on to complain that "Mortgagee Letter 2024-07 does not explain how mortgage lenders are permitted to engage in

4

'remediation' for appraiser bias while complying with appraiser independence requirements mandated by federal law.  Nor does it explain when a borrower's allegations of appraiser bias or discrimination require a lender to act to 'remediate' an appraisal." *Id.* ¶ 37.  But these are grievances properly directed at the requirements of the Fair Housing Act, not at HUD—there are many factual scenarios in which the protections of the FHA could be implicated, and HUD did not undertake to instruct lenders how to comply with the law in all of them.

Even if Mortgagee Letter 2024-07 were implausibly read to dictate the requirement Rocket Mortgage imagines, that letter was rescinded last month.[1]  *See* Mortgagee Letter 2025-08 ("Rescinding Multiple Appraisal Policy Related Mortgagee Letters"), https://www.hud.gov/sites/default/files/OCHCO/documents/2025-08hsgml.pdf.  The relevant portion of the Policy Handbook it modified will soon be amended to remove the language Rocket Mortgage cites.  So Mortgagee Letter 2024-07 cannot now be the basis for the imaginary rule Rocket Mortgage challenges, if it ever could.

Finally, Rocket Mortgage points to bulletins issued by Fannie Mae and Freddie Mac.  Compl. ¶¶ 38-39; Pl.'s Br. at 13.  Again, the very text Rocket Mortgage cites does not command a lender to dictate a property valuation to an appraiser.  Instead, the bulletins require a "framework to review and respond to a borrower-initiated reconsideration of value," Compl. ¶ 38 (citing "Fannie Mae Bulletin"), and "'[a] review and resolution procedure for [a reconsideration of value] request' for 'when the Borrower(s) believes the

---

[1] Rocket Mortgage's opposition does not mention the rescission, despite it having taken place nearly three weeks before the opposition was filed.  *See generally* Pl.'s Br.

5

appraiser's report or the appraiser's opinion of value . . . may be deficient' because it 're-flects discriminatory practices,'" *id.* (citing "Freddie Mac Bulletin"). Nowhere does the concept of direct interference in appraiser valuation appear. Even if it did, Rocket Mortgage has not plausibly alleged that HUD, the sole defendant in this case, played any controlling role in the promulgation of those policies. The Court may take judicial notice of the fact that Fannie Mae and Freddie Mac are private companies, Federal Housing Finance Agency, *About Fannie Mae and Freddie Mac*, https://www.fhfa.gov/about/fannie-mae-freddie-mac (last accessed Apr. 18, 2025), under the conservatorship of an independent agency that is not HUD, Federal Housing Finance Agency, *Conservatorship*, https://www.fhfa.gov/conservatorship (last accessed Apr. 18, 2025). *See Wildearth Guardians v. Pub. Serv. Co. of Colo.*, 698 F. Supp. 2d 1259, 1263 (D. Colo. 2010). Even if HUD "collaborat[ed]" with the companies, as Rocket Mortgage alleges, Compl. ¶ 38, it is not plausible that HUD imposed its view on the companies and, through their bulletins, on the regulated public. *See Brown v. City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025).

All told, Rocket Mortgage has not plausibly identified any definite HUD policy. For the reasons that follow, that shortcoming is fatal to Counts I and II of its complaint.

    II.    **The Court Lacks Subject-Matter Jurisdiction over Counts I & II**

        a.  **HUD is immune from Counts I & II.**

            i.  **Rocket Mortgage has not identified agency action.**

Rocket Mortgage does not dispute that, at a minimum, there must be "agency

action" for § 702's waiver of sovereign immunity to be applicable.[2]  *See* Pl.'s Br. at 7-9.  Instead, Rocket Mortgage quibbles over whether the action in question must be "final." *Id.* at 8-9.  Here, that distinction is immaterial, because HUD has not taken the action Rocket Mortgage alleges at all—the promulgation of a new policy.  *See* Pt. I, *supra*.

Rocket Mortgage's two-fold response is to (1) insist on the existence of a "policy," *see* Pl.'s Br. at 9; *but see* Pt. I, *supra*, and (2) to cite various cases in which agencies were held to have taken reviewable action where the agencies had articulated their views of the law, albeit informally, Pl.'s Br. at 9-15, noting that even a policy "not formally called a 'rule'" may nevertheless be one, *id.* at 10.  However, because HUD has not espoused the view Rocket Mortgage ascribes to it at all, formally or informally, the cited cases are inapposite.  *See Bear Creek Bible Church v. EEOC*, 571 F. Supp. 3d 571, 589 (N.D. Tex. 2021) ("The EEOC issued a guidance document"), *rev'd & remanded on other grounds by Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914 (5th Cir. 2023); *Sinclair Wyo. Refining Co. v. U.S. EPA*, 72 F.4th 1137, 1141 (10th Cir. 2023) (relevant agency actions were two adjudications); *Texas v. EEOC*, 933 F.3d 433, 437 (5th Cir. 2019) (challenge brought to published "Enforcement Guidance"); *Tennessee v. Dep't of Educ.*, 104 F.4th 577, 586 (6th Cir. 2024) (interpretation of Title IX published in Federal Register).

---

[2] Rocket Mortgage does cite a D.C. Circuit decision and a decision of this Court to note that "[t]he requirement of a final agency action is *not* jurisdictional."  Pl.'s Br. at 7-8 (quoting *Trudeau v. FTC*, 456 F.3d 178, 184 (D.C. Cir. 2006) and citing *Slater Park Land & Livestock, LLC v. U.S. Army Corps of Eng'rs*, 423 F. Supp. 3d 1076, 1078-80 (D. Colo. 2019)).  Without question, the existence of final agency action is a required element of a viable APA claim.  But because § 702 only applies where the agency has "acted or failed to act," agency action is also relevant to sovereign immunity, and thus to jurisdiction.  *See United States v. Testan*, 424 U.S. 392, 399 (1976) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)).

Similarly, this case is unlike the unwritten practice deemed to be reviewable in *Hispanic Affairs Project v. Acosta*, 901 F.3d 378 (D.C. Cir. 2018). *See* Pl.'s Br. at 11-12. The plaintiffs there proffered "significant, plausible evidence" of an agency's unwritten "practice of habitually approving and extending H-2A visas for lengthy periods of time." *Hisp. Affs. Project*, 901 F.3d at 388. Here, in contrast, Rocket Mortgage contends that an ill-defined rule exists—based only on the prior existence of an interagency task force, a now-rescinded guidance document, and two private companies' bulletins, none of which actually contains language that would (if it could) require lenders to interfere directly with appraisals. *See* Pt. I, *supra*. Much more is required. *See also Al Otro Lado, Inc. v. McAleenan*, 394 F. Supp. 3d 1168, 1206 (S.D. Cal. 2019) (cited in Pl.'s Br. at 13) (evidence offered of actual unwritten policy); *id.* at 1207 ("A plaintiff may not simply attach a policy label to disparate agency practices or conduct.").

Because no policy exists, Rocket Mortgage cannot plausibly claim to have "suffered legal wrong" as a result of it. Pl.'s Br. at 10; *see also id.* at 14 (alleging a new, "affirmative obligation"). By extension, Rocket Mortgage's claim that it must modify its internal procedures to comply with the rule it posits is implausible. *See id.* at 12. The nondiscrimination obligations of the Fair Housing Act and its 1989 implementing regulation are not "new." Lenders like Rocket Mortgage have been obliged to comply with them for more than thirty-five years.

### ii. Rocket Mortgage has an adequate alternative remedy.

Count I is also barred on sovereign-immunity grounds because Rocket Mortgage has an adequate alternative remedy in the form of the Enforcement Suit, for the reasons

8

HUD detailed in its motion.  *See* MTD at 15-16.  In response, Rocket Mortgage offers principally that the Enforcement Suit may not in fact address the "policy" it says exists, and so "Count I is the only surefire way of obtaining clarity on the relationship between TILA and the FHA."  Pl.'s Br. at 27.  Because there is no "policy," *see supra*, the need for "clarity" does not exist—even if the Court could overlook the justiciability problems shot throughout Count I.  *See* MTD at 16-21.

### b.  Count I does not state a constitutional case or controversy.

The Court lacks subject-matter over Count I for an additional reason:  it presents no ripe case or controversy.[3]  *See id.* at 17-21.  As HUD previously detailed, "[r]ipeness considers timing:  whether events have progressed far enough to be sure that declaratory judgment will resolve a live dispute with practical consequences."  *Id.* at 17 (quoting *Travelers Cas. Ins. Co. of Am. v. A-Quality Auto Sales, Inc.*, 98 F.4th 1307, 1314 (10th Cir. 2024)).  The relief Rocket Mortgage seeks will not resolve such a dispute, because Count I neither sufficiently develops the facts required to make the legal determinations requested, nor plausibly alleges that Rocket Mortgage faces hardship.  *See id.*

With little explanation, Rocket Mortgage insists that its suit presents "at least three 'purely legal' issues."  Pl.'s Br. at 16.  But much like calling an imaginary agency position a "policy" does not make it so, insistence alone does not make issues "purely legal."

---

[3] As HUD explained in its motion, the fact that the relief Rocket Mortgage seeks would not resolve an entire case or controversy, in addition to furnishing a compelling reason to decline jurisdiction, *see* MTD at 24, has constitutional import, *see id.* at 21. Rocket Mortgage nominally disagrees, Pl.'s Br. at 15 n.3, but makes no real argument to rebut the Supreme Court's contrary conclusion, *see* MTD at 21 (citing *Calderon v. Ashmus*, 523 U.S. 740, 748 (1998)).

9

Rocket Mortgage pivots, faulting HUD for "argu[ing] the merits." *Id.* at 17 (citing MTD at 18). Far from an impermissible move, there is no way to understand the legal questions Rocket Mortgage poses without asking what facts are necessary to answer them. HUD has already explained that those facts are many, including "what information the appraiser used to support his valuation, what the lender knew at the time it relied on the appraisal, and what steps (if any) the lender took to remedy problems." MTD at 18. At its core, the question Rocket Mortgage seeks to have the Court answer is "does TILA permit a lender to correct a discriminatory appraisal?" *See* Pl.'s Br. at 16. The answer, of course, is "it depends on what 'correct' means." There is no proper definition of "correct," in turn, because the "policy" from which that word derives is a creature entirely of Rocket Mortgage's making. In other words, Count I raises issues that are quintessentially unripe, depending (as they do) on "facts that [are] not yet . . . sufficiently developed." *See Travelers Cas. Ins. Co.*, 98 F.4th at 1314.

As for hardship, Rocket Mortgage's arguments, in the main, hinge (as before) on the existence of a policy that does not, in fact, exist. *See* Pl.'s Br. at 18-19. To the extent Rocket Mortgage fears future enforcement actions, *id.* at 19, any such action would be brought not based on a violation of HUD's "policy," as Rocket Mortgage asserts, but of the FHA. And *contra* Rocket Mortgage, both parties indeed have a "significant interest in postponing review," *see id.* (quoting *Venetian Casino Resort, LLC v. EEOC*, 409 F.3d 359, 365-66 (D.C. Cir. 2005))—not only because the policy Rocket Mortgage complains of is illusory, but because the question of FHA liability is so inextricably fact-dependent.

10

### III. Counts I & II Otherwise Merit Dismissal

#### a. The Court should decline to exercise jurisdiction over Count I.

Employing the Tenth Circuit's *Mhoon* factors, HUD's motion details the reasons that Count I offers little reason for the Court to exercise its discretionary declaratory jurisdiction. *See* MTD at 21-27 (applying *State Farm Fire & Cas. Ins. Co. v. Mhoon*, 31 F.3d 979 (10th Cir. 1994)). Restated in "practical" terms, *see Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1190 (10th Cir. 2015), the case is straightforward. HUD has not announced a policy requiring anything more than federal law already requires. What federal law does require in a particular instance is a fact-bound determination not susceptible to broad, abstract pronouncements. And the only concrete factual setting where the issues Rocket Mortgage raises matter is already the subject of an Enforcement Suit in this District. There is no valid reason, then, for this Court to address them.

Rocket Mortgage's counterarguments, as before, rest on the premise that HUD has promulgated a policy requiring the lender to change its business practices. Because that premise is mistaken, each of Rocket Mortgage's arguments under *Mhoon* unravels. It cannot be that a declaratory judgment here would "resolve the conflict" between HUD's "policy" and TILA, Pl.'s Br. at 21, when no policy (and thus no conflict) exists. And though Rocket Mortgage is adamant that "this case is not about the" Enforcement Suit, *id.* at 20, it nevertheless details its view that declaratory relief in this suit would be of benefit in the Enforcement Suit. *Id.* at 22-24. Instead of solving problems, this approach creates them. For the reasons HUD gave in its motion, the use of this declaratory suit to outflank the government in the Enforcement Suit counsels against the Court exercising its

11

discretionary jurisdiction here. MTD at 22-24, 26-27. Those reasons include declining to permit Rocket Mortgage to engage in procedural gamesmanship. *But see* Pl.'s Br. at 27-28 (arguing against application of the first-to-file rule).

Despite earlier conceding that relief in this suit might be of benefit in the Enforcement Suit, *see id.* at 22-24, Rocket Mortgage goes on to insist that this suit is not an attempt to interfere with the outcome there. The company criticizes HUD's procedural fencing argument as "speculative." *Id.* at 25. But Rocket Mortgage's criticism is more an articulation of why its gambit might not work than proof of the weakness of HUD's claim. Indeed, the fact that no HUD policy exists means that it is difficult to explain this suit any other way. Rocket Mortgage also asserts that the "primary issue" in each suit is different. *Id.* at 28. To a certain extent, the primary issues in both suits *do* overlap, as Rocket Mortgage alternately recognizes and refuses to recognize. *Compare id.* at 22-23, *with id.* at 28; *see also id.* at 23-24. But to the extent Rocket Mortgage seeks a broader judicial pronouncement on abstract questions of law, like "clarity on the relationship between TILA and the FHA," *id.* at 27, no federal court can grant that relief within the bounds of Article III judicial power. *See Carney v. Adams*, 592 U.S. 53, 58 (2020).

### b. Count II fails to state a claim.

Count II alleges HUD's failure to comply with required notice-and-comment procedures when it promulgated its new "policy." Compl. ¶ 69. Because Rocket Mortgage has alleged neither final agency action nor a substantive "rule" to which notice-and-comment requirements attach, Count II fails to state a claim. *See* MTD at 27-28.

Rocket Mortgage's response mischaracterizes HUD's position. HUD did not argue

that "policies are," categorically, "not 'rules.'"  Pl.'s Br. at 29.  But whatever the circumstances may be where a policy (written or unwritten) can properly be considered a "rule" under the APA, those circumstances are not present where the agency has not formulated a new policy at all.  "Content" may "matter," *id.* at 29 (citing *Azar v. Allina Health Servs.*, 587 U.S. 566, 575 (2019)), but that cannot save Rocket Mortgage's case where, as here, there is no "content" (or, in the Supreme Court's terminology, "substantive pronouncement[]," *Allina Health Servs.*, 587 U.S. at 575) whatsoever.  *See* Pt. I, *supra*.  Rocket Mortgage's failure to identify any new policy also necessarily means the absence of final agency action.  *But see* Pl.'s Br. at 29.  Simply put, HUD has not promulgated any rule, and so cannot have been required to undergo notice and comment.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Dated: April 22, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
Federal Programs Branch

LESLEY FARBY
Deputy Director
Federal Programs Branch

<u>s/ Simon Gregory Jerome</u>
***Simon Gregory Jerome***
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Telephone: (202) 514-1673
E-mail: simon.g.jerome@usdoj.gov
Attorney for Defendant United States Department of Housing and Urban Development